[No. S163335. Nov. 30, 2009.]

COSTCO WHOLESALE CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GREG RANDALL et al., Real Parties in Interest.

**COUNSEL**

Seyfarth Shaw, Kenwood C. Youmans, David D. Kadue, Aaron R. Lubeley and Ann H. Qushair for Petitioner.

Fenwick & West, Victor Schachter, Michael A. Sands and Dan Ko Obuhanych for California Employment Law Council as Amicus Curiae on behalf of Petitioner.

Robie & Matthai, James R. Robie, Steven S. Fleischman; Haight, Brown & Bonesteel and J. Alan Warfield for Association of Southern California Defense Counsel and Los Angeles County Bar Association as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Hagens Berman Sobol Shapiro, Reed R. Kathrein, Lee M. Gordon, Elaine T. Byszewski, Steve W. Berman; Rehwald Glasner & Chaleff, Rehwald Rameson Lewis & Glasner, Lawrence Glasner, William Rehwald and Daniel Chaleff for Real Parties in Interest.

## OPINION

**WERDEGAR, J.**—In this case we consider whether the trial court erred by directing a referee to conduct an in camera review of an opinion letter sent by outside counsel to a corporate client, allowing the referee to redact the letter to conceal that portion the referee believed to be privileged, and ordering the client to disclose the remainder to the opposing party. We conclude the court's directions and order violated the attorney-client privilege, and violated as well the statutory prohibition against requiring disclosure of information claimed to be subject to the attorney-client privilege in order to rule on a claim of privilege. (Evid. Code, § 915, subd. (a).)

## BACKGROUND

In June 2000, Costco Wholesale Corporation (Costco), which operates warehouse-style retail establishments throughout California, retained the law firm of Sheppard, Mullin, Richter & Hampton to provide legal advice regarding whether certain Costco warehouse managers in California were exempt from California's wage and overtime laws.[1] Attorney Kelly Hensley, an expert in wage and hour law, undertook the assignment, ultimately producing for Costco the 22-page opinion letter at issue here. The letter followed conversations held by Hensley with two warehouse managers Costco had made available to her. Costco, the managers, and Hensley understood the communications between the managers and Hensley were, and would remain, confidential. Similarly, Costco and Hensley understood that Hensley's opinion letter was, and would remain, confidential.

Several years later, real parties in interest, Costco employees (hereafter collectively referred to as plaintiffs), filed this class action against Costco,

---

[1] Labor Code section 510, subdivision (a) requires payment at a rate of no less than time and one-half the regular rate of compensation for any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek. However, California Code of Regulations, title 8, section 11070, subdivision 1(A) provides an exemption for persons who for more than one-half of their work time are "employed in administrative, executive, or professional capacities."

claiming that from 1999 through 2001 Costco had misclassified some of its managers as "exempt" employees and therefore had failed to pay them the overtime wages they were due as nonexempt employees. In the course of the litigation, plaintiffs sought to compel discovery of Hensley's opinion letter. Costco objected on the grounds the letter was subject to the attorney-client privilege and the attorney work product doctrine. Plaintiffs disagreed, arguing both that the letter contained unprivileged matter and that Costco had placed the contents of the letter in issue, thereby waiving the privilege.

The trial court, over Costco's objection, ordered a discovery referee to conduct an in camera review of Hensley's opinion letter to determine the merits of Costco's claims of attorney-client privilege and work product doctrine. The referee produced a heavily redacted version of the letter, stating her conclusion that although much of it "constitutes attorney client communications and/or the type of attorney observations, impressions and opinions plainly protected as work product," those portions of text involving "factual information about various employees' job responsibilities" are protected by neither the privilege nor the doctrine. The referee explained that statements obtained in attorney interviews of corporate employee witnesses generally are not protected by the corporation's attorney-client privilege and do not become cloaked with the privilege by reason of having been incorporated into a later communication between the attorney and the client. She also found that while interviewing the two Costco managers, Hensley had acted not as an attorney but as a fact finder. The trial court, without ruling on plaintiffs' assertion that Costco had waived the privilege by placing the contents of the letter in issue, adopted the findings and conclusions of the referee and ordered Costco to produce a version of the letter in the same form as recommended and redacted by the referee.

Costco petitioned the Court of Appeal for a writ of mandate, arguing the trial court had erred by ordering the in camera review of Hensley's opinion letter and by ordering disclosure of a redacted version of the letter. The Court of Appeal denied the petition. Without ruling on the merits of the trial court's discovery order or its decision to refer the opinion letter to the referee for in camera review, the court concluded Costco had not demonstrated that disclosure of the unredacted portions of the letter would cause it irreparable harm in the action, explaining the unredacted text simply referred to factual matters that would be easily discoverable by other means.

We hold the attorney-client privilege attaches to Hensley's opinion letter in its entirety, irrespective of the letter's content. Further, Evidence Code section

915 prohibits disclosure of the information claimed to be privileged as a confidential communication between attorney and client "in order to rule on the claim of privilege." (*Id.*, subd. (a).) Finally, contrary to the Court of Appeal's holding, a party seeking extraordinary relief from a discovery order that wrongfully invades the attorney-client relationship need not also establish that its case will be harmed by disclosure of the evidence.

As we find the attorney-client privilege precludes discovery of the opinion letter, we do not consider whether the work product doctrine would also apply to prevent its discovery. And, as the trial court's ruling extended only to the opinion letter, neither do we consider the separate but related question of whether, independent of the letter, the conversations between Hensley and Costco's warehouse managers might be subject to either the attorney-client privilege or the work product doctrine.[2]

## DISCUSSION

### I.

■ The attorney-client privilege, set forth at Evidence Code section 954, confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." The privilege "has been a hallmark of Anglo-American jurisprudence for almost 400 years." (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 [208 Cal.Rptr. 886, 691 P.2d 642].) Its fundamental purpose "is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. [Citation.] . . . [¶] Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship. As this court has stated: 'The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.' [Citations.]" (*Id.* at pp. 599–600.) "[T]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case." (*Gordon v. Superior Court* (1997) 55 Cal.App.4th 1546, 1557 [65 Cal.Rptr.2d 53].)

---

[2] After the briefing was complete, Costco's counsel informed us the case had settled. Costco, however, filed an unopposed request that we retain jurisdiction, pointing out the case raises issues of continuing public importance that have attracted the interest of several amici curiae. We have discretion to retain jurisdiction in such circumstances (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 415, fn. 3 [15 Cal.Rptr.3d 643, 93 P.3d 260]), and we exercise that discretion here.

■ A trial court's determination of a motion to compel discovery is reviewed for abuse of discretion. (*2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1387 [7 Cal.Rptr.3d 197].) An abuse of discretion is shown when the trial court applies the wrong legal standard. (*Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1493 [66 Cal.Rptr.3d 833].) However, when the facts asserted in support of and in opposition to the motion are in conflict, the trial court's factual findings will be upheld if they are supported by substantial evidence. (*HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 60 [24 Cal.Rptr.3d 199, 105 P.3d 560]; *D. I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700].) The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. (*D. I. Chadbourne, Inc.*, at p. 729; *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 123 [68 Cal.Rptr.2d 844].) Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply. (Evid. Code, § 917, subd. (a); *Wellpoint Health Networks, Inc.*, at pp. 123–124.)

■ That Costco engaged Hensley to provide it with legal advice and that the opinion letter was a communication between Costco's attorney (Hensley) and Costco are undisputed. The letter was "confidential," defined as "information transmitted between a client and his or her lawyer in the course of [the attorney-client] relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted . . . ." (Evid. Code, § 952.) Indeed, the referee heavily redacted the letter because she believed it was a confidential communication between attorney and client. That Hensley's opinion letter may not have been prepared in anticipation of litigation is of no consequence; the privilege attaches to any legal advice given in the course of an attorney-client relationship. (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 371 [20 Cal.Rptr.2d 330, 853 P.2d 496]; *Zurich American Ins. Co. v. Superior Court, supra*, 155 Cal.App.4th at p. 1495.) ■ And it is settled that a corporate client such as Costco can claim the privilege. (Evid. Code, § 954, final par.; *D. I. Chadbourne, Inc. v. Superior Court, supra*, 60 Cal.2d at pp. 732, 736.) The undisputed facts, therefore, make out a prima facie claim of privilege.

## II.

■ The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material. As we explained in *Mitchell v. Superior Court, supra,* 37 Cal.3d at page 600: "[T]he privilege covers the transmission of documents which are available to the public, and not merely information in the sole possession of the attorney or client. In this regard, it is the actual fact of the transmission which merits protection, since discovery of the transmission of specific public documents might very well reveal the transmitter's intended strategy." We therefore held in *Mitchell* that a client could not be questioned about warnings from her attorney about the health effects of an industrial chemical even if the warnings might be described as factual matter rather than legal advice. We observed: "Neither the statutes articulating the attorney-client privilege nor the cases which have interpreted it make any differentiation between 'factual' and 'legal' information." (*Id.* at p. 601; see *In re Jordan* (1974) 12 Cal.3d 575, 580 [116 Cal.Rptr. 371, 526 P.2d 523] [finding the attorney-client privilege attached to copies of cases and law review articles transmitted by an attorney to the attorney's client].)

Focusing on the warehouse managers' statements to Attorney Hensley, plaintiffs point out that the statements of a corporate employee to the corporation's attorney are not privileged if the employee speaks as an independent witness, even if the employer requires the employee to make the statement. (*D. I. Chadbourne, Inc. v. Superior Court, supra,* 60 Cal.2d at p. 737.) They further maintain that when a corporate employer has more than one purpose for directing an employee to make a report, whether the employee's statement should be classified as that of the corporation or as that of an independent witness depends upon the employer's "dominant purpose" in requiring the employee to make the statement. (*Id.* at p. 737.) And they emphasize that the question of whether the employer's dominant purpose in requiring a report was for transmittal to an attorney in the course of professional employment, like the question of whether a particular employee's statement was that of an independent witness, is for the trial court or other finder of fact, whose conclusion is binding on the reviewing court if supported by substantial evidence. (*HLC Properties, Ltd. v. Superior Court, supra,* 35 Cal.4th at p. 60; *Martin v. Workers' Comp. Appeals Bd.* (1997) 59 Cal.App.4th 333, 346–347 [69 Cal.Rptr.2d 138].)

These points have little to do with the case before us. In *Chadbourne* we considered whether a corporate employee, reporting to the corporation's attorney, was speaking on behalf of the corporation so that his report was in effect the communication of the corporate client. (*D. I. Chadbourne, Inc. v.*

*Superior Court, supra,* 60 Cal.2d at pp. 736–738.) In that context, the dominant-purpose test determines whether the relationship between the attorney and the corporate employee is an attorney-client relationship; if the corporation's dominant purpose in requiring the employee to make a statement is the confidential transmittal to the corporation's attorney of information emanating from the corporation, the communication is privileged. (*Id.* at p. 737.) And as we have explained, because the privilege protects the *transmission* of information, if the communication is privileged, it does not become unprivileged simply because it contains material that could be discovered by some other means. *Chadbourne* and its progeny therefore would be relevant if we were considering whether the statements of the warehouse managers interviewed by Hensley were themselves subject to the attorney-client privilege. But these authorities are not relevant to the question before us: whether the communication between Costco's attorney and Costco was privileged.

Plaintiffs make a second, related point also directed at a concern not present here, asserting that a client cannot protect unprivileged information from discovery by transmitting it to an attorney. As we explained in *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 397 [15 Cal.Rptr. 90, 364 P.2d 266]: " 'Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney. [Citation.] Obviously, a client may be examined on deposition or at trial as to the facts of the case, whether or not he has communicated them to his attorney. [Citation.] While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney.' " Thus, "a litigant may not silence a witness by having him reveal his knowledge to the litigant's attorney . . . ." (*D. I. Chadbourne, Inc. v. Superior Court, supra,* 60 Cal.2d at p. 734.) But again, we are not here concerned with whether the privilege covers the statements of the warehouse managers to Hensley.

 Plaintiffs next point out that the attorney-client privilege does not attach to an attorney's communications when the client's dominant purpose in retaining the attorney was something other than to provide the client with a legal opinion or legal advice. (*2,022 Ranch v. Superior Court, supra,* 113 Cal.App.4th at pp. 1390–1391; *Aetna Casualty & Surety Co. v. Superior Court* (1984) 153 Cal.App.3d 467, 475 [200 Cal.Rptr. 471].) For example, the privilege is not applicable when the attorney acts merely as a negotiator for the client or is providing business advice (see *Aetna Casualty & Surety Co.,* at p. 475); in that case, the relationship between the parties to the communication is not one of attorney-client. But while plaintiffs insist Hensley's interviews of Costco's warehouse managers was simple fact gathering that could have been done by a nonattorney, they have never disputed that Costco retained Hensley, an expert in California wage and hour law, to provide it

with legal advice regarding the exempt status of some of its employees, nor did the trial court base its discovery order on a finding that Costco's dominant purpose in retaining Hensley was to obtain her services as a fact gatherer. The situation is comparable to that in *Aetna*, where in reversing the trial court's order allowing discovery of the attorney's files, the appellate court explained: "This is a classic example of a client seeking legal advice from an attorney. The attorney was given a legal document (the insurance policy) and was asked to interpret the policy and to investigate the events that resulted in damage to determine whether Aetna was legally bound to provide coverage for such damage." (*Id.* at p. 476.) ■ Here, Hensley was presented with a question requiring legal analysis and was asked to investigate the facts she needed to render a legal opinion. As we have explained, when the communication is a confidential one between attorney and client, the entire communication, including its recitation or summary of factual material, is privileged. In sum, if, as plaintiffs contend, the factual material referred to or summarized in Hensley's opinion letter is itself unprivileged it may be discoverable by some other means, but plaintiffs may not obtain it by compelling disclosure of the letter.

## III.

■ There is a second reason for overturning the discovery order. Evidence Code section 915 provides, with exceptions not applicable here, that "the presiding officer may not require disclosure of information claimed to be privileged under this division[3] . . . in order to rule on the claim of privilege . . . ." (Evid. Code, § 915, subd. (a).) Section 915 also prohibits disclosure of information claimed to be privileged work product under Code of Civil Procedure section 2018.030, subdivision (b), but, as to the work product privilege, if the court is unable to rule on the claim of privilege "without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and any other persons as the person authorized to claim the privilege is willing to have present." (Evid. Code, § 915, subd. (b).) No comparable provision permits in camera disclosure of information alleged to be protected by the attorney-client privilege. (*Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 45, fn. 19 [265

---

[3] "[T]his division," division 8 of the Evidence Code, includes not just the attorney-client privilege (Evid. Code, § 954), but a variety of others arising out of confidential relationships, such as the marital privilege (*id.*, § 980), the physician-patient privilege (*id.*, § 994), the psychotherapist-patient privilege (*id.*, § 1014) and the clergy-penitent privilege (*id.*, § 1033).

Cal.Rptr. 801, 784 P.2d 1373].)[4] Nonetheless, the trial court caused Hensley's opinion letter to be reviewed at the in camera hearing, and its order compelling Costco to produce the redacted version of the letter was based in large part on the referee's review of the very information Costco claimed to be privileged.

■ In arguing in favor of the trial court's ruling, plaintiffs cite *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1135 [69 Cal.Rptr.2d 317, 947 P.2d 279], and *Cornish v. Superior Court* (1989) 209 Cal.App.3d 467, 480 [257 Cal.Rptr. 383], for the proposition that despite the unequivocal language of Evidence Code section 915, subdivision (a), the section's prohibition "is not absolute," and a litigant might be required to reveal some information in camera to enable the court to determine whether a communication is subject to the attorney-client privilege. But in citing these cases, plaintiffs fail to recognize the critical distinction between holding a hearing to determine the validity of a claim of privilege and requiring disclosure at the hearing of the very communication claimed to be privileged. Evidence Code section 915, while prohibiting examination of assertedly privileged information, does not prohibit disclosure or examination of *other* information to permit the court to evaluate the basis for the claim, such as whether the privilege is held by the party asserting it. (*Moeller*, at p. 1135 [hearing on type of attorney-trustee communications to determine who holds the privilege].) Evidence Code section 915 also does not prevent a court from reviewing the facts asserted as the basis for the privilege to determine, for example, whether the attorney-client relationship existed at the time the communication was made, whether the client intended the communication to be confidential, or whether the communication emanated from the client. (*Cornish*, at p. 480.) Accordingly, while the prohibition of Evidence Code section 915 is not absolute in the sense that a litigant may still have to reveal *some* information to permit the court to evaluate the basis for the claim of privilege (*Moeller*, at p. 1135), it does not follow that courts are free to ignore the section's prohibition and demand in camera disclosure of the allegedly privileged information itself for this purpose.

Plaintiffs also cite *Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599 [56 Cal.Rptr.2d 341], but the court in that case distinguished between documents that "would, in all probability, be protected by the attorney-client privilege" (*id.* at p. 1618) and those that might be protected by a qualified privilege, not

---

[4] Because a court may order disclosure of information in order to determine whether it is protected by the work product doctrine, but may not order its disclosure to determine if it is subject to the attorney-client privilege, a court should without requiring disclosure first determine if the information is subject to the attorney-client privilege. If the court determines the privilege does not apply, it may then consider whether to order disclosure of the information at an in camera hearing for the purpose of deciding if it is protected work product.

subject to the prohibition of Evidence Code section 915, subdivision (a). With respect to the documents purportedly protected by the *qualified* privilege, the court suggested it would be an abuse of discretion to permit discovery "without the court first examining those documents and communications, by in camera inspection, to determine if they have sufficient relevance to the requesting party's case to overcome the . . . claim of qualified privilege." (*Lipton*, at p. 1618.) That suggestion cannot be interpreted to hold that a court is free to order in camera inspection of documents to determine if they are subject to a privilege to which Evidence Code section 915 applies.

The Court of Appeal read our decision in *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557] to hold that in camera disclosure of privileged information is permissible to determine if a party has waived the privilege or if the communication falls under some exception to the privilege. But in that case, we found the patient had waived the psychotherapist-patient privilege by initiating litigation that put his mental and emotional state at issue. Notwithstanding the waiver, we held caution should be exercised in disclosing the content of the patient's communications with his psychiatrist "to avoid unwarranted intrusions into the confidences of the relationship." (*Id.* at p. 431.) Because only the patient could know both the nature of the ailments for which he was seeking recovery and also the general content of the psychotherapist communications, we held "the burden rests upon the patient initially to submit some showing that a given confidential communication is not directly related to the issue he has tendered to the court." (*Id.* at p. 436.) We stated: "Although ordinarily a patient cannot be required to disclose privileged information in order to claim the privilege (Evid. Code, § 915, subd. (a)), because the privileged status of psychotherapeutic communications under the patient-litigant exception depends upon the *content* of the communication, a patient may have to reveal some information about a communication to enable the trial judge to pass on his claim of irrelevancy. Upon such revelation, the trial judge should take necessary precautions to protect the confidentiality of these communications; for example, he might routinely permit such disclosure to be made *ex parte* in his chambers." (*Id.* at p. 437, fn. 23.) Thus, although we observed that when the patient-litigant's information about the content of a communication might compromise its confidentiality the court may appropriately review the information in camera, we said nothing about reviewing *the communication itself.* In such instances, however, the party claiming the privilege may *choose* to reveal the communication in camera to prevent the court from ordering disclosure of private information bearing no relevance to the litigation. Such a procedure does not violate Evidence Code section 915 because the court, without examining the confidential communication, has previously ruled that an exception to the privilege applies, and the in camera review is now sought by the party holding the privilege to prevent its disclosure. Similarly, nothing in Evidence

Code section 915 prevents a party claiming a privilege from making an in camera disclosure of the content of a communication to respond to an argument or tentative decision that the communication is not privileged.

■ Finally, the attorney-client privilege is a legislative creation, which courts have no power to limit by recognizing implied exceptions. (*Roberts v. City of Palmdale, supra,* 5 Cal.4th at p. 373.) Concern that a party may be able to prevent discovery of relevant information therefore provides no justification for inferring an exception to Evidence Code section 915. As noted earlier, it has long been understood that " '[t]he privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.' " (*Mitchell v. Superior Court, supra,* 37 Cal.3d at p. 600.) And because the privilege protects a *transmission* irrespective of its content, there should be no need to examine the content in order to rule on a claim of privilege. (*Cornish v. Superior Court, supra,* 209 Cal.App.3d at p. 480.)

■ Because we hold that a court may not order disclosure of a communication claimed to be privileged to allow a ruling on the claim of privilege, we disapprove two cases plaintiffs have cited in support of the trial court's orders. In *Martin v. Workers' Comp. Appeals Bd., supra,* 59 Cal.App.4th at page 347, the court, without considering Evidence Code section 915, subdivision (a), ordered a workers' compensation judge to conduct an in camera review of the statements of employee witnesses to determine whether the statements were from independent witnesses or had emanated instead from the corporate employer. As we have explained, Evidence Code section 915 prohibits a court from ordering in camera review of information claimed to be privileged in order to rule on the claim of privilege.

Insofar as inconsistent with our conclusion, we also disapprove *2,022 Ranch v. Superior Court, supra,* 113 Cal.App.4th 1377, an insurance bad faith action. At issue were communications transmitted to the insurer from its in-house claims adjusters who also were attorneys. The insurer claimed all the communications were privileged, as involving legal advice emanating from its attorneys, whereas the petitioner asserted none were, as the attorneys were serving merely as claims adjusters. The Court of Appeal distinguished communications reporting the results of factual investigations from those reflecting the rendering of legal advice, held only the latter were privileged, and ordered the trial court to review each of the communications to determine its dominant purpose. (*Id.* at p. 1397.) In this respect, the court erred. The proper procedure would have been for the trial court first to determine the dominant purpose *of the relationship* between the insurance company and its

in-house attorneys, i.e., was it one of attorney-client or one of claims adjuster-insurance corporation (as some of the evidence suggested, see *id.* at pp. 1385, 1397–1398). The corporation, having the burden of establishing the preliminary fact that the communications were made during the course of an attorney-client relationship (*D. I. Chadbourne, Inc. v. Superior Court, supra,* 60 Cal.2d at p. 729), was free to *request* an in camera review of the communications to aid the trial court in making that determination, but the trial court could not *order* disclosure of the information over the corporation's objection. If the trial court determined the communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means. If the trial court instead concluded that the dominant purpose of the relationship was not that of attorney and client, the communications would not be subject to the attorney-client privilege and therefore would be generally discoverable. However, even then, the corporation would be entitled to request an in camera review of a particular communication to support a claim that it should be protected despite the general absence of an attorney-client relationship.

Plaintiffs also cite *OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 896 [9 Cal.Rptr.3d 621], and *Cornish v. Superior Court, supra,* 209 Cal.App.3d at page 480, where the appellate court observed that notwithstanding Evidence Code section 915, subdivision (a), courts have allowed in camera review of information claimed to be privileged where necessary to determine whether an exception to the privilege applies. As we have explained, section 915 prohibits disclosure of information claimed to be privileged in order to determine if a communication is privileged. But after the court has determined the privilege is waived or an exception applies generally, the court to protect the claimant's privacy may conduct or order an in camera review of the communication at issue to determine if some protection is warranted notwithstanding the waiver or exception.

## IV.

The remaining question is whether the Court of Appeal was justified in denying Costco relief despite the invalidity of the trial court's order. The court concluded extraordinary relief was not warranted because Costco had not demonstrated it would be irreparably harmed by the release of the opinion letter in redacted form because much of the remaining material could easily be obtained by some other means. This reasoning implies that the harm in an order compelling disclosure of privileged information is the risk the party seeking disclosure will obtain information to which it is not entitled. But, as we have said, the fundamental purpose of the attorney-client privilege is the

preservation of the confidential relationship between attorney and client (*Mitchell v. Superior Court, supra*, 37 Cal.3d at p. 599), and the primary harm in the discovery of privileged material is the disruption of that relationship (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309]), not the risk that parties seeking discovery may obtain information to which they are not entitled. As we explained in *Roberts*: "The need for the availability of the prerogative writs in discovery cases where an order of the trial court granting discovery allegedly violates a privilege of the party against whom discovery is granted, is obvious. The person seeking to exercise the privilege must either succumb to the court's order and disclose the privileged information, or subject himself to a charge of contempt for his refusal to obey the court's order pending appeal. The first of these alternatives is hardly an adequate remedy and could lead to disruption of a confidential relationship. The second is clearly inadequate as it would involve the possibility of a jail sentence and additional delay in the principal litigation during review of the contempt order. Thus, the use of the prerogative writ in a case [seeking review of an order compelling disclosure of records claimed to be subject to a privilege] is proper." (*Ibid.*)

Accordingly, Costco is entitled to relief because the trial court's order threatened the confidential relationship between Costco and its attorney. Costco was not also required to demonstrate that its ability to present its case would be prejudiced by the discovery of the opinion letter.

## DISPOSITION

The judgment of the Court of Appeal is reversed. The case is remanded to that court with directions to issue a writ of mandate vacating the trial court's order compelling discovery and to remand the case to the trial court for further proceedings consistent with this opinion.

George, C. J., Baxter, J., Chin, J., Moreno, J., Corrigan, J., and O'Leary, J.,* concurred.

**GEORGE, C. J.,** Concurring.—I agree with the majority that the lengthy opinion letter sent by outside counsel to corporate counsel, containing both factual recitations and legal advice, is protected by the attorney-client privilege. I also agree that the trial court erred in requiring disclosure of the letter for the purpose of ruling on petitioner's claim of privilege, and that the Court of Appeal erred in declining to grant extraordinary relief on the ground that disclosure of the letter in redacted form did not harm petitioner.

---

*Associate Justice of the Court of Appeal, Fourth District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Although I also agree with the majority that "[t]he attorney-client privilege attaches to a confidential communication between the attorney and the client" (maj. opn., *ante*, at p. 734), in order to clarify the elements of the privilege I believe it bears emphasis that to be privileged, the communication also must occur "in the course of" the attorney-client relationship (Evid. Code, § 952)—that is, the communication must have been made for the purpose of the legal representation.[1] In its application of the privilege to the present case, the majority emphasizes the purpose of the relationship between the attorney and the client. (See maj. opn., *ante*, at pp. 739–740.) The privilege does not apply outside the context of such a relationship, certainly, but we should not forget that the purpose of the communication also is critical to the application of the privilege.

The attorney-client privilege applies to a confidential communication between the attorney and the client—the latter being defined as a person who "consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." (§ 951.)

A confidential communication between the attorney and the client is defined as "information transmitted between a client and his or her lawyer *in the course of* that relationship." (§ 952, italics added.) The statutory requirement that the communication occur "in the course of" the attorney-client relationship is consistent with the law as it existed prior to the 1965 enactment of section 952. (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 952, p. 307.) Prior to the enactment of the statute, it long had been established that, in order to be privileged, it was necessary that the communication be made for the purpose of the attorney's professional representation, and not for some unrelated purpose. (*Solon v. Lichtenstein* (1952) 39 Cal.2d 75, 80 [244 P.2d 907] ["A communication to be privileged must have been made to an attorney acting in his professional capacity toward his client."]; *McKnew v. Superior Court* (1943) 23 Cal.2d 58, 64–65 [142 P.2d 1]; *Carroll v. Sprague* (1881) 59 Cal. 655, 659–660; *Satterlee v. Bliss* (1869) 36 Cal. 489, 509; see also *Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1151 [220 Cal.Rptr. 507] ["It is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent."]; *Montobello Rose Co. v. Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 32 [173 Cal.Rptr. 856] [communications necessary to "secure or render legal service or advice" are privileged].) Secondary sources reflect the same understanding of the privilege. (2 Witkin, Cal. Evidence (4th ed. 2000) Witnesses, § 116, p. 373, and cases cited ["The burden is on the claimant of the privilege to establish the condition of professional consultation."]; 31 Cal.Jur.3d (2002) Evidence, § 488, p. 764.)

---

[1] All further statutory references are to the Evidence Code unless otherwise indicated.

When section 952 is viewed as a whole, it is even clearer that the Legislature intended to extend the protection of the privilege solely to those communications between the lawyer and the client that are made for the purpose of seeking or delivering the lawyer's legal advice or representation. Thus the statute identifies a " 'confidential communication' " in *general* terms as meaning "information transmitted between a client and his or her lawyer in the course of that relationship," but the provision also supplies more *specific* examples of what is meant by adding that a confidential communication "includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (*Ibid.*) Under the principle of statutory construction known as "*ejusdem generis*," the general term ordinarily is understood as being " 'restricted to those things that are similar to those which are enumerated specifically.' " (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160, fn. 7 [278 Cal.Rptr. 614, 805 P.2d 873].) It follows that in order to be privileged, the information transmitted between the lawyer and the client must be similar in nature to the enumerated examples—namely, the lawyer's legal opinion or advice.

Our description of a confidential communication in *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363 [20 Cal.Rptr.2d 330, 853 P.2d 496], is instructive. In that decision, we explained that such a communication in the context of section 952 need not concern litigation; rather it suffices that the communication consist of information transmitted between the client and the lawyer *within the scope* of the attorney-client relationship. (*Roberts v. City of Palmdale, supra,* 5 Cal.4th at p. 371.) We further explained that "the privilege applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened." (*Ibid.*) Our analysis was not restricted to an examination of the purpose of the attorney-client relationship, but rather considered whether the nature of the communication itself fell within the bounds of the statute.

In another example that demonstrates the importance of the purpose or nature of the communication rather than the more general purpose of the attorney-client relationship in this context, we have recognized that "[k]nowledge that is not otherwise privileged does not become so merely by being communicated to an attorney," and that " 'the forwarding to counsel of nonprivileged records, in the guise of reports, will not create a privilege with respect to such records and their contents where none existed theretofore.' " (*Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 210–211 [91 Cal.Rptr.2d 716, 990 P.2d 591].)

Ordinarily, when an attorney-client relationship exists, communications between parties to the relationship are made for the purpose of receiving or rendering legal advice, and the purpose of the communication rarely will be in dispute. In the present case, the claimant of the privilege adequately demonstrated that the purpose of the challenged opinion letter was to advise the client upon a legal matter. Sometimes, however, the dominant purpose of the communication will be a critical consideration. As discussed, communications between persons who stand in an attorney-client relationship are not privileged in every instance, because it sometimes occurs that an attorney-client relationship exists, but that the attorney also acts in another capacity for the client, as, for example, the client's agent in a business transaction. In view of the requirements of section 952 and the authorities noted above, the question of the purpose of the communication arises regardless of what element predominates in the relationship of the attorney and the client.