## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANOUCHE SARKISSIAN, as Administrator, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PATRICIA SLESINGER BENTSON, <br><br> Defendant and Respondent. | B334193 <br><br><br> (Los Angeles County Super. Ct. No. BC708214) <br><br> **ORDER MODIFYING OPINION** <br><br> **[NO CHANGE IN JUDGMENT]** |
| ANOUCHE SARKISSIAN, as Administrator, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CHAMPION MACHINERY MOVERS, INC., <br><br> Defendant and Respondent. | B339517 <br><br><br> (Los Angeles County Super. Ct. No. BC708214) <br><br> **ORDER MODIFYING OPINION** <br><br> **[NO CHANGE IN JUDGMENT]** |

| ANOUCHE SARKISSIAN, as Administrator, etc., | B342956 |
| --- | --- |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC708214) |
| v. | **ORDER MODIFYING OPINION** |
| NISIM BARAK et al., | **[NO CHANGE IN JUDGMENT]** |
| Defendants and Respondents. | |

BY THE COURT:

It is ordered that the opinion filed herein on June 11, 2026, be modified as follows:

On page 14 of the opinion, the following sentence in the last paragraph before the Discussion section should be omitted:

We grant plaintiff's request to take judicial notice of the record on appeal in B334193 with respect to all three appeals.

There is no change in the judgment.

_____

STRATTON, P. J.         SCHERB, J.        VIRAMONTES, J.

2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| ANOUCHE SARKISSIAN, as Administrator, etc., | B334193 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC708214) |
| v. | |
| PATRICIA SLESINGER BENTSON, | |
| Defendant and Respondent. | |
| ANOUCHE SARKISSIAN, as Administrator, etc., | B339517 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC708214) |
| v. | |
| CHAMPION MACHINERY MOVERS, INC., | |
| Defendant and Respondent. | |

ANOUCHE SARKISSIAN, as
Administrator, etc.,

     Plaintiff and Appellant,

     v.

NISIM BARAK et al.,

     Defendants and Respondents.

B342956

(Los Angeles County
Super. Ct. No. BC708214)

APPEALS from orders and judgments of the Superior Court of Los Angeles County.  Christopher K. Lui, Judge. Affirmed.

Mazur & Mazur, Janice R. Mazur; Law Office of Ara Aroustamian and Ara Aroustamian for Plaintiff and Appellant.

Law Offices of David E. Wheeler and David E. Wheeler for Defendant and Respondent Patricia Slesinger Bentson.

Eliel Chemerinski for Defendant and Respondent Champion Machinery Movers, Inc.

Kahana & Feld, Samuel Yu, Sebastian Kaplan and Donald Hall III for Defendants and Respondents Nisim Barak and Island Snacks, Inc.

McGarrigle, Kenney & Zampiello, Patrick C. McGarrigle and Aidan P. McGarrigle for Defendants and Respondents David Berg and DCDC Holdings, LLC.

\* \* \* \* \* \* \* \* \* \*

Plaintiff appeals from orders denying motions for leave to withdraw admissions, and from summary judgments entered thereafter in favor of six codefendants. Plaintiff contends the trial court abused its discretion in denying her request to withdraw and amend admissions under Code of Civil Procedure section 2033.300,[1] and also erred in subsequently entering judgment in favor of defendants based on those admissions.

We conclude the court did not abuse its discretion in denying plaintiff leave to withdraw the admissions. We also conclude that plaintiff has failed to affirmatively show any basis for reversing the judgments entered in favor of any defendant. We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Garbis Sarkissian and David Bentson were business partners who formed a company called Hoop Nuts, LLC that produced nut-based snacks. Sarkissian and Bentson each held an equal 50 percent membership interest in Hoop Nuts. Garbis Sarkissian passed away in March 2014. David Bentson died a year later.

The plaintiff and appellant in this action is Anouche Sarkissian, the widow of Garbis Sarkissian, in her capacity as the administrator of the Estate of Garbis Sarkissian (plaintiff). Patricia Slesinger Bentson (Slesinger), the widow of David Bentson, is one of the defendants and respondents. The other five defendants and respondents are entities and individuals allegedly involved in the events related to the winding up of Hoop Nuts as a company. DCDC Holdings, LLC (DCDC) was the

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

3

entity that leased Hoop Nuts its principal place of business in Van Nuys, California, and eventually evicted Hoop Nuts in 2016 via unlawful detainer. David Berg is the owner of DCDC. Island Snacks, Inc. (Island Snacks) was a long-time customer of Hoop Nuts that eventually purchased some of Hoop Nuts' equipment, after Hoop Nuts had been evicted and was no longer doing business. Nisim Barak is a principal stakeholder in Island Snacks. Champion Machinery Movers, Inc. (Movers) was the entity that stored Hoop Nuts' equipment and other assets after it was evicted by DCDC.

Plaintiff filed this action in June 2018, four years after the death of Garbis Sarkissian. In the fourth amended complaint, plaintiff alleged eight causes of action: (1) dissolution; (2) accounting; (3) breach of contract; (4) declaratory relief; (5) conversion; (6) conspiracy to commit conversion; (7) fraudulent transfer; and (8) receipt of stolen property. DCDC, Berg, Barak, Island Snacks, and Movers were served and brought into the action as doe defendants.

Plaintiff alleged that up until his death in 2014, Garbis Sarkissian was the managing member of Hoop Nuts. As part of his initial capital contribution, Sarkissian loaned $750,000 to Hoop Nuts which the company was to repay at the rate of $6,200 per month. The terms of the loan were recognized in a Managing Member Deal Memo executed by Sarkissian and David Bentson. According to plaintiff, after the death of Bentson in 2015, his widow, Slesinger, seized control of the business from Anouche Sarkissian and stopped making payments on the loan. Slesinger mismanaged Hoop Nuts and in December 2015, the company was shut down following a failed health inspection. Plaintiff further alleged that all defendants wrongfully conspired to convert, and

4

did convert, Hoop Nuts' remaining assets to the detriment of plaintiff.

### 1.    The requests for admissions

In August 2022, after substituting new counsel to represent her, Slesinger propounded additional written discovery to plaintiff, including a second set of requests for admissions containing 139 separate requests (RFA's). An initial set of requests consisting of 28 requests had been previously propounded by Slesinger's former counsel and responded to by plaintiff.

The RFA's included several requests to admit the genuineness of various documents but otherwise focused primarily on plaintiff's standing to bring the claims alleged in her operative pleading. The requests also sought to resolve issues related to the existence of a security agreement between Garbis Sarkissian and Hoop Nuts regarding the $750,000 loan made by Sarkissian to the company when it was initially formed.

A response to the RFA's was due on Tuesday, September 6, 2022, the day after the three-day Labor Day weekend. On the afternoon of Friday, September 2, 2022, a paralegal from the Law Office of Ara Aroustamian, counsel for plaintiff, contacted Slesinger's counsel to attempt to meet and confer. No prior efforts to meet and confer had been made. Plaintiff asked Slesinger to withdraw the RFA's and serve a new set of more tailored requests, or to grant plaintiff an extension of time within which to respond to the RFA's. Slesinger was unwilling to extend the time to respond past September 6, 2022 or to withdraw the RFA's and serve a new set in light of the then-pending trial date of March 13, 2023, and corresponding deadlines to file a

5

summary judgment motion.  The parties were unable to resolve the RFA's by meet and confer.

On September 7, 2022, the day *after* responses were due, plaintiff filed a motion for protective order arguing the RFA's were excessive and improper and requesting an order relieving plaintiff from having to respond to any of the requests.  The hearing date plaintiff noticed for the motion was January 24, 2023, more than four months later.  It is undisputed plaintiff did not serve any written response to the RFA's in conjunction with filing the motion for a protective order.  It is also undisputed plaintiff did not seek an ex parte order advancing or otherwise specially setting the hearing on the protective order for a date earlier than January 24, 2023.

## 2.    Slesinger's motion to deem the RFA's admitted

Shortly after plaintiff filed her motion for a protective order, Slesinger filed a motion for an order deeming the RFA's admitted.  Slesinger noticed the hearing for October 20, 2022.

In his supporting declaration, David Wheeler, counsel for Slesinger, attested to the fact that in setting the hearing on his motion, he saw multiple available hearing dates in the court's digital reservation system.  Wheeler attached screen shots verifying the available slots on the court's calendar.  Wheeler also explained that plaintiff first made an effort to meet and confer about the RFA's on Friday afternoon, when the responses were due the following Tuesday, after the holiday weekend.  Slesinger argued it was suspicious that plaintiff had set her motion for a protective order in January 2023 with so many earlier available dates on the court's motion calendar, and had failed to seek an order advancing the hearing date.  Slesinger emphasized that plaintiff had not served responses to the RFA's.

6

In opposing Slesinger's motion, plaintiff filed a brief opposition arguing only that the RFA's were excessive and burdensome and advising the court that plaintiff had filed a motion for protective order. The opposition was not supported by a declaration from plaintiff's counsel, Ara Aroustamian, attesting to excusable neglect or mistake in failing to timely respond to the RFA's. The opposition also did not state that a response in substantial compliance with the statutory requirements had been served on Slesinger pending resolution of the motion.

At the October 20, 2022 hearing, Aroustamian for the first time explained he had been in Europe for three weeks for his daughter's wedding during the time when a response to the RFA's was due. He conceded his office was "late" in meeting and conferring but explained that his legal assistant filed the motion for protective order at his direction in his absence, and that the court gave the January 2023 hearing date as the first available date on its calendar. Aroustamian said appropriate declarations under oath could be provided attesting to those facts in connection with plaintiff's motion for a protective order, but he did not explain why those declarations were not already filed as part of the opposition to Slesinger's motion.

The trial court granted Slesinger's motion, reasoning that plaintiff relied exclusively on having filed a motion for a protective order, but offered no explanation for failing to comply with the statutory requirements by serving a response to the RFA's at any time before the October 20, 2022 hearing date. The court also pointed out that counsel had not made any effort to advance the hearing on his motion for protective order other than to make a belated oral request during the hearing.

Some of the requests deemed admitted by the court's order included admissions (request Nos. 83 through 97) that neither plaintiff, nor Anouche Sarkissian individually, was a member or manager of Hoop Nuts at any time from June 2018, when this action was filed, through the date the RFA's were served.  In addition, request Nos. 121 through 129 admitted that Hoop Nuts was dissolved by operation of law in 2015, and plaintiff had no standing to pursue any of the alleged claims derivatively on behalf of Hoop Nuts.

### 3.    Plaintiff's first motion for leave to withdraw admissions

On January 19, 2023, three months *after* the court granted Slesinger's motion, plaintiff filed her first motion for leave to withdraw the admissions, with a hearing noticed for March 7, 2023.

Aroustamian's supporting declaration stated the following facts on the issue of excusable neglect.  Aroustamian said he was a solo practitioner handling, on average, 55 active cases at a time, while also providing estate planning and other transactional services to clients.  He explained he did hire outside contract counsel when calendar conflicts could not be avoided, but he usually relied on two legal assistants to help with the workload.  His legal assistants were customarily either a paralegal or an individual with a law degree, and he said he had not had prior difficulties providing proper representation to his clients despite his small staff.  However, during the summer of 2022 when the RFA's were served, Aroustamian experienced staffing issues.  One of his legal assistants took an extended leave of absence to sit for the bar exam, and the other assistant unexpectedly gave

his two-week notice.  After securing a replacement from a temp agency, that individual then immediately gave notice as well.

Aroustamian further explained he was scheduled to be in Europe for three weeks from August 31, 2022 through September 19, 2022 to attend his daughter's wedding.  A response to the RFA's was due during this three-week period, along with responses to the related form interrogatories and requests for documents that Slesinger had served with the RFA's.  Aroustamian knew it was going to be a challenge to respond to such voluminous discovery so he left directions with his staff to meet and confer with Slesinger's counsel, and to file a motion for a protective order if no informal resolution could be reached.  Aroustamian also noted that significant work was due around that same time in other pending litigation matters.

Plaintiff's motion was also supported by the declaration of Bobber Garibian, legal assistant to Aroustamian.  Garibian stated the January 24, 2023 hearing date was the first available date for a hearing on a motion for protective order according to the court's digital reservation system.  He explained that when he checked the court's digital reservation system after learning of the court's order granting Slesinger's motion, he checked to see if it provided different dates for different types of discovery motions.  He said that when asking to schedule a motion for protective order, the court's system did not offer the same number of available slots that were given to other discovery motions like motions to compel.

In opposing the motion, Slesinger argued the court's ruling deeming the RFA's admitted was proper and in accordance with the statutory requirements and applicable law.

In January 2023, the parties appeared at the hearing on plaintiff's motion for protective order which was denied as moot. After discussing scheduling issues with the parties, including plaintiff's pending motion for leave to withdraw the admissions, the court advanced the hearing on its own motion, setting the hearing for February 15, 2023. The court ordered Slesinger's pending motion for summary judgment to be heard on the same date. The court also continued the then-pending March 13, 2023 trial date to July 31, 2023, and extended all discovery and motion cut-off dates to correspond to the new trial date.

At the hearing on February 15, 2023, Aroustamian stated he had nothing to add to his papers regarding excusable neglect. He reiterated his willingness to pay reasonable attorney fees in the event the court granted him relief for the failure to timely respond to the RFA's.

The trial court denied plaintiff's motion, explaining that Aroustamian's declaration failed to establish mistake, inadvertence, or excusable neglect. The court emphasized that while Aroustamian detailed staff shortages and heavy caseloads compounded by his travel abroad, he provided no explanation for failing to get a belated response served at any time before the October 20, 2022 hearing on Slesinger's motion. The court found the failure to respond to the RFA's and avoid a deemed admitted order was due to "inexcusable neglect" by an experienced attorney who should have been aware of the statutory requirements for responding to requests for admissions. The court also found there would be undue prejudice to Slesinger if relief was granted because the pending trial date would make it impossible to get another motion for summary judgment duly noticed and heard. The court noted there was little leeway for

10

extending dates further when the case was almost at the five-year dismissal date and the case was being "saved" from dismissal solely because of the extension granted by "Emergency Rule 10(a)" passed during the Covid-19 pandemic.

In the same written order, the court granted Slesinger's motion for summary judgment. The court explained the reasons for its ruling at length, including that plaintiff was deemed to have admitted facts demonstrating a lack of standing to pursue her asserted claims.

**4.    Plaintiff's motion for leave to withdraw and amend certain admissions and motion for reconsideration**

Two weeks later, plaintiff filed two more motions asking for relief from the deemed admissions order. One motion was directed specifically to request Nos. 67, 76, 78, 83, 85, 87 through 90, 95 and 97, and asked for leave to withdraw those admissions and to substitute denials. The other motion asked the court to reconsider its order of February 15, 2023, denying plaintiff's first motion. Plaintiff also filed a motion asking the court to reconsider its summary judgment ruling in favor of Slesinger. The hearing on all three motions was set for April 25, 2023.

In support of these motions, Aroustamian reiterated the facts from his original motion that the court had already found to be deficient. In addition, Aroustamian attested that it was his "usual practice" to leave directions for his staff on handwritten notes, and he followed that same practice before leaving for Europe with respect to responding to Slesinger's RFA's. He said he recalled leaving a note directing his assistant to prepare a response to the RFA's, in addition to a motion for protective order, and to show the response to plaintiff for review and verification. Aroustamian said he did not know why the note was

11

not seen or how it may have been misplaced, but the note had still "not been recovered to this day." He said he was unaware his assistant had not seen the note and had only prepared and filed the motion for a protective order without simultaneously serving a response to the RFA's. Garibian attested to no new facts, except that he served responses to Slesinger's RFA's on March 1, 2023.

At the April 25, 2023 hearing, Aroustamian conceded that his office neglected to timely respond to the RFA's, but argued his client would suffer greater prejudice than the defendants if relief was not granted. He pointed out that significant discovery had already been completed and that much of the delay in the case had been occasioned by Slesinger who changed counsel several times, along with difficulty in adding and serving doe defendants. Aroustamian offered to stipulate to shorten time for the hearing of defense motions and to pay reasonable fees to ameliorate any prejudice to defendants.

Wheeler reiterated that the court had correctly granted his deemed admitted motion under the applicable statutes. He argued that Aroustamian's claimed additional facts about leaving a note for his staff lacked credibility, and that if Aroustamian had left a note directing that responses be prepared, then why did he not inquire of his staff about where the response was when they presented only the motion for protective order for his final approval. Wheeler pointed out that Aroustamian had yet to explain the failure to serve responses after he returned home from Europe, well in advance of the October 20, 2022 hearing, which would have defeated the motion.

Aroustamian responded by saying he simply did not recall leaving the note for his staff when he was preparing the first

motion.  However, after the February 15, 2023 hearing, he recalled preparing the note, and therefore he renewed his request for relief in order to explain that to the court.

By written order dated May 22, 2023, the trial court denied plaintiff's motions.  The court explained again that Aroustamian was an experienced attorney and it was "inexcusable" for an attorney with his years of experience to not have complied with the statutory requirements by serving responses before the October 20, 2022 hearing "regardless of whether a motion for protective order was also filed or not."  Moreover, the court said Aroustamian's new assertion regarding the handwritten note was "convenient but not credible."  The court found the failure to follow the statutory requirements in responding to the RFA's constituted "inexcusable neglect" and was conduct that "fell below the professional standard of care."  With respect to plaintiff's motion seeking reconsideration of the court's denial of the first motion to withdraw, the court concluded plaintiff had not shown new facts or circumstances justifying relief under section 1008.

The court also denied plaintiff's motion for reconsideration of its summary judgment ruling in favor of Slesinger.

## 5.    The order to show cause hearing

The trial court sua sponte set an order to show cause hearing for September 1, 2023, to allow the parties a final opportunity to argue any bases for the court's possible reconsideration of the deemed admissions order, focusing primarily on whether substantial prejudice to the defendants could be avoided if plaintiff was granted relief.  After receiving supplemental briefing and hearing lengthy argument from the parties, the court took the matter under submission.  On September 5, 2023, the court issued a written order discharging

13

the order to show cause without modifying any of its prior orders regarding the RFA's.

Thereafter, a several judgment was entered in favor of Slesinger on September 21, 2023. Separate motions for summary judgment were granted in favor of the remaining defendants. On May 7, 2024, judgment was entered in favor of Movers. On November 5, 2024, judgments were entered in favor of Barak and Island Snacks, and in favor of Berg and DCDC.

These appeals followed. We grant plaintiff's request to take judicial notice of the record on appeal in B334193 with respect to all three appeals.

## DISCUSSION

### 1. The orders denying plaintiff's motions for leave to withdraw and amend admissions

Like most discovery orders, we review the trial court's rulings on plaintiff's motions for leave to withdraw admissions under the deferential abuse of discretion standard. (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 772 (*St. Mary*).) The abuse of discretion standard of review "is founded on principles of deference to the trial court, such as 'whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' " (*Ibid.*) We will not disturb the trial court's order absent a clear showing of abuse or a miscarriage of justice. (*Ibid.*)

Where there are controverted facts in support of and in opposition to the motion, "the trial court's factual findings will be upheld if they are supported by substantial evidence." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*).) "[W]e defer to the trial court's assessments of credibility and the weight of the evidence and do not interfere

14

with its determinations of these matters." (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 415 (*McClain*).) We are mindful that a "trial court's discretion in ruling on a motion to withdraw or amend an admission is not unlimited, but must be exercised in conformity with the spirit of the law and in a manner that serves the interests of justice." (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1420.)

In assessing the trial court's exercise of discretion here, we are guided by the statutes governing requests for admissions. Section 2033.300 states that a party may withdraw or amend an admission "only on leave of court granted after notice to all parties." (*Id*., subd. (a).) Subdivision (b) provides that the court has the discretion to permit withdrawal or amendment "*only* if it determines that the admission was the result of mistake, inadvertence, or *excusable* neglect, and that the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits." (*Id*., subd. (b), italics added.)

The facts before the court at the February 15, 2023 hearing on plaintiff's first motion for leave to withdraw admissions were as follows: Aroustamian was in Europe for his daughter's wedding from August 31, 2022 through September 19, 2022. Responses to the RFA's were due on September 6, 2022, while Aroustamian was abroad. He was a solo practitioner who had long relied primarily on two legal assistants without any problem, but during the summer of 2022, he experienced unusual staffing issues. One of his assistants was gone for an extended leave of absence to take the bar exam. The other assistant unexpectedly gave two weeks' notice. Aroustamian struggled to maintain replacements via a temp agency. He nevertheless left

directions for his staff to meet and confer with Slesinger's counsel while he was in Europe and to file a motion for a protective order if no informal resolution could be reached. Aroustamian's assistant attested to the fact that January 24, 2023 was the earliest date available for a hearing on plaintiff's motion for a protective order. He also explained that the court's digital reservation system had fewer available dates for scheduling motions for protective orders as opposed to other types of discovery motions.

In denying plaintiff's motion, the court acknowledged counsel's staffing issues but underscored that Aroustamian provided no explanation whatsoever for failing to serve a belated response at any time before the hearing on Slesinger's motion. The court found plaintiff's failure to timely respond to the RFA's to be due to "inexcusable neglect" by an experienced attorney who should have been aware of the statutory requirements for responding to requests for admissions. The court also found there would be undue prejudice to Slesinger if relief was granted because of the pending trial date and the looming expiration of the five-year dismissal statute.

The trial court acted well within the bounds of its statutory authority in denying plaintiff's motion for failing to demonstrate excusable neglect. The court was required to grant Slesinger's motion unless it found that plaintiff "before the hearing on the motion" had served "a proposed response to the requests for admission that [was] in substantial compliance with Section 2033.220." (§ 2033.280, subd. (c).) The statutory scheme thus provides an explicit mechanism for a responding party who has been dilatory in responding to requests for admissions with the means to prevent the issuance of an order deeming facts

16

admitted, i.e., service of a belated response in substantial compliance with section 2033.220. Aroustamian never explained what prevented him from serving a response after he returned home from his daughter's wedding. Irrespective of the difficulties his depleted staff may have experienced in his absence, Aroustamian had four weeks after he returned home to ensure a proper response was made before the hearing on Slesinger's motion. He chose to do nothing, including failing to file an ex parte application to advance the hearing on his own motion for a protective order. Then, after the court issued the deemed admitted order, plaintiff waited three months before filing a motion for relief, notwithstanding the fact that a trial date was pending and discovery and motion cut-off dates were looming. The trial court did not abuse its discretion in denying plaintiff relief. (*St. Mary*, *supra*, 223 Cal.App.4th at p. 772.)

We likewise find no abuse of discretion by the trial court in denying plaintiff's subsequent motions. Plaintiff did offer additional facts in support of the followup motions heard in April 2023, but the trial court rejected them. Aroustamian said he recalled an additional fact that he had not remembered when preparing the first motion for relief. He said he recalled leaving a note directing his assistant to prepare a response to the RFA's, in addition to a motion for protective order, and he had no idea why the note was not seen or was misplaced. In denying the motions, the court rejected Aroustamian's explanation as lacking credibility, finding it "convenient but not credible." The court also reiterated that it was inexcusable for an experienced attorney to not be aware of the statutory requirements regarding requests for admissions.

17

Substantial evidence supports the trial court's factual findings on the lack of excusable neglect, and we are therefore bound to uphold those findings. (*Costco*, *supra*, 47 Cal.4th at p. 733.) We also find no basis in the record to disregard the court's assessment that counsel's explanation lacked credibility. (*McClain*, *supra*, 39 Cal.App.5th at p. 415.) Plaintiff correctly points out that the law favors resolution of actions on their substantive merits. But the policy favoring resolution on the merits does not take precedence over a finding of inexcusable neglect under section 2033.300 that is supported by substantial evidence.

## 2.    The summary judgment rulings

Section 2033.410, subdivision (a) states that "[a]ny matter admitted in response to a request for admission is *conclusively established against the party making the admission in the pending action*, unless the court has permitted withdrawal or amendment of that admission under Section 2033.300." (§ 2033.410, subd. (a), italics added.)

Plaintiff was denied leave to withdraw the admissions deemed admitted on October 20, 2022. As we have explained above, the record does not demonstrate any abuse of discretion by the trial court in denying plaintiff's motions for relief. Based on those admissions, it was conclusively established for purposes of the pending action that plaintiff lacked standing to assert the claims alleged in her operative pleading. All parties to the action could rely on those facts being conclusively established, not just Slesinger as the propounding party. Because plaintiff's admissions were considered conclusively established, it meant they were "not subject to being contested through contradictory evidence." (*St. Mary*, *supra*, 223 Cal.App.4th at p. 775; see also

18

*Swedberg v. Christiana Cmty. Builders* (1985) 175 Cal.App.3d 138, 144.)

Thus, plaintiff was precluded from offering any evidence purporting to contradict her admissions that she lacked standing to proceed with her claims. Plaintiff has not demonstrated any basis for the summary judgment orders being reversed that is not dependent on a reversal of the deemed admitted order. We therefore affirm the orders granting summary judgment in favor of all defendants.

## DISPOSITION

The orders of February 15, 2023 and May 22, 2023, denying the motions for relief filed by plaintiff and appellant Anouche Sarkissian, in her capacity as the administrator of the Estate of Garbis Sarkissian, are affirmed.

The judgments entered in favor of defendants and respondents Patricia Slesinger Bentson, DCDC Holdings, LLC, David Berg, Nisim Barak, Island Snacks, Inc., and Champion Machinery Movers, Inc., are affirmed.

Defendants and respondents shall recover their costs of appeal.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

SCHERB, J.

19