Filed 4/13/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COUNTY OF LOS ANGELES BOARD OF SUPERVISORS et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> ACLU OF SOUTHERN CALIFORNIA et al., <br><br> Real Parties in Interest. | No. B257230 <br><br> (Los Angeles County Super. Ct. No. BS145753) |

ORIGINAL PROCEEDINGS in mandate. Luis A. Lavin, Judge. Petition granted.

John F. Krattli and Mark J. Saladino, County Counsel, Roger H. Granbo, Assistant County Counsel, Jonathan McCaverty, Deputy County Counsel; Greines, Martin, Stein & Richland, Timothy T. Coates and Barbara W. Ravitz for Petitioners.

Horvitz & Levy, Lisa Perrochet, Steven S. Fleischman and Jean M. Doherty for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Peter J. Eliasberg for Real Parties in Interest ACLU of Southern California and Eric Preven.

Davis Wright Tremaine, Jennifer L. Brockett and Nicolas A. Jampol for Real Party in Interest ACLU of Southern California.

_____

The question we resolve in this writ proceeding is whether billing invoices sent by an attorney to a client must be disclosed pursuant to the California Public Records Act (CPRA), or whether they are protected by the attorney-client privilege. Both the CPRA and the attorney-client privilege advance public policies of the highest order: the CPRA fosters transparency in government, and the attorney-client privilege enhances the effectiveness of our legal system. In the instant matter, these two interests collide. We conclude that, because the CPRA expressly exempts attorney-client privileged communications from the CPRA's reach, the tension must here be resolved in favor of the privilege. Because the invoices are confidential communications within the meaning of Evidence Code section 952, they are exempt from disclosure under Government Code section 6254, subdivision (k). Accordingly, we grant the writ petition.

FACTUAL AND PROCEDURAL BACKGROUND

In the wake of several publicized investigations into allegations that the Los Angeles County Sheriff's Department used excessive force on inmates housed in the Los Angeles County jail system, real parties in interest the ACLU of Southern California and Eric Preven (collectively, the ACLU) submitted a CPRA request to petitioners the Los Angeles County Board of Supervisors and the Office of the Los Angeles County Counsel (collectively, the County) for invoices specifying the amounts that the County of Los Angeles had been billed by any law firm in connection with nine different lawsuits "brought by inmates involving alleged jail violence." It also sought disclosure of service agreements between the County and two consultants and an "implementation monitor." The ACLU sought the documents to enable it to " 'determine what work was being done on the lawsuits, the scope of that work, the quality of the representation, and the efficiency of the work.' "

2

The County agreed to produce copies of the requested documents related to three such lawsuits, which were no longer pending, with attorney-client privileged and work product information redacted. It declined to provide billing statements for the remaining six lawsuits, which were still pending. It averred that the "detailed description, timing, and amount of attorney work performed, which communicates to the client and discloses attorney strategy, tactics, thought processes and analysis" were privileged and therefore exempt from disclosure under Government Code section 6254, subdivision (k), as well as under the CPRA's "catchall" exemption, Government Code section 6255, subdivision (a). It contended the service agreements were also protected by, inter alia, Business and Professions Code sections 6149 (which deems written fee contracts confidential communications) and 6148.

The ACLU filed a petition for writ of mandate in the superior court, seeking to compel the County to "comply with the [CPRA]" and disclose the requested records for all nine lawsuits. The ACLU averred: "Current and former jail inmates have brought numerous lawsuits against the County and others for alleged excessive force. The County has retained a number of law firms to defend against these suits. It is believed that the selected law firms may have engaged in 'scorched earth' litigation tactics and dragged out cases even when a settlement was in the best interest of the County or when a settlement was likely. Given the issues raised by the allegations in these complaints and the use of taxpayer dollars to pay for the alleged use of scorched earth litigation tactics, the public has a right and interest in ensuring the transparent and efficient use of taxpayer money." The ACLU argued that the billing records were not generally protected by the attorney-client or work product privileges, or by the Business and Professions Code sections, and did not fall within any of the statutory exceptions to the CPRA. The ACLU acknowledged that "to the extent that a particular billing description reflects an attorney's legal opinion and advice to the County, or reveals the attorney's mental impressions or theories of the case, such information may properly be redacted under the attorney-client privilege or work product doctrine." However, the ACLU

3

expected that such entries would be "few in number, and the remainder of an attorney's billing records is not protected from disclosure at all."

The County responded by reiterating that the billing records were protected by the attorney-client privilege; that the Business and Professions Code sections demonstrated information about financial arrangements and services was privileged and confidential; and that the billing records were protected from disclosure under the CPRA's catchall exemption.

In a thoughtful decision, the superior court granted the petition for writ of mandate insofar as it pertained to the billing records.[1] The court held that the County had failed to show the billing records were attorney-client privileged communications exempt from disclosure. It reasoned that Evidence Code section 952, which defines attorney-client privileged communications, "does not automatically apply to any communication between an attorney and his or her client." The party claiming the privilege must assert specific facts demonstrating how the challenged document qualifies as a privileged communication. In the court's view, the County had "not alleged any specific fact demonstrating why the billing statements, with proper redactions concealing actual attorney-client privileged communications or attorney work product, would qualify as privileged communications exempt from disclosure under Evidence Code section 952 . . . ." Further, the County had failed to produce any "actual evidence concerning the contents of the billing statements, including whether they were produced for a litigation-related purpose."

The court also rejected the County's argument that the billing statements should be considered confidential in light of Business and Professions Code sections 6148 and 6149. The court observed that Business and Professions Code section 6148, subdivisions

---

[1] By the time of the hearing below, the requests for two of the service agreements were no longer at issue. The superior court denied the ACLU's petition insofar as it sought the agreement between the County and the implementation monitor, and denied the ACLU's motion for reconsideration. Those rulings are not before us.

(a) and (b), describes what types of information should be included in fee agreements and billing statements, respectively. However, Business and Professions Code section 6149 deemed only fee agreements to be confidential communications for purposes of the attorney-client privilege. Applying the standard canons of statutory construction, the court concluded the Legislature did not intend the information in billing statements to be deemed confidential.

Finally, the court found the billing statements were not exempt from disclosure under the CPRA's "catchall" exemption, because the County had failed to demonstrate a clear overbalance in favor of nondisclosure justifying withholding the requested records.

Accordingly, the court ordered the County to release "all invoices issued by the County's outside attorneys in the nine cases specified" in the CPRA request. However, "[t]o the extent any documents that are responsive to the Requests reflect an attorney's legal opinion or advice, or reveal an attorney's mental impressions or theories of the case, such limited information may be redacted."

The County then filed the instant petition for writ of mandate, challenging the trial court's ruling. The Association of Southern California Defense Counsel, as amicus curiae, filed a letter in support of issuance of the writ. We issued an order to show cause.

DISCUSSION

1. *Standard of review*

A superior court's ruling under the CPRA, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is "immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ." (Gov. Code, § 6259, subd. (c); *MinCal Consumer Law Group v. Carlsbad Police Dept.* (2013) 214 Cal.App.4th 259, 263-264; *Consolidated Irrigation Dist. v. Superior Court* (2012) 205 Cal.App.4th 697, 708.) We independently review a trial court's interpretation of the CPRA and its application of the CPRA to undisputed facts, but uphold its express or implied factual findings if based on substantial evidence. (*County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 62 (*Anderson-*

5

*Barker*); *Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1045; *Consolidated Irrigation Dist. v. Superior Court,* at pp. 708-709.)

2. *The statutes*

a. *The CPRA*

"The California Legislature in 1968, recognizing that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state' (Gov. Code, § 6250), enacted the California Public Records Act, which grants access to public records held by state and local agencies (Gov. Code, § 6253, subd. (a))." (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 66-67 (*Long Beach Police*).) "As the result of an initiative adopted by the voters in 2004, this principle is now enshrined in the state Constitution: 'The people have the right of access to information concerning the conduct of the people's business, and therefore, . . . the writings of public officials and agencies shall be open to public scrutiny.' (Cal. Const., art. I, § 3, subd. (b)(1).)" (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 329 (*International Federation*).)

The CPRA's purpose is to increase freedom of information by providing public access to information in the possession of public agencies. (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 370; *Anderson-Barker, supra,* 211 Cal.App.4th at p. 63; *Consolidated Irrigation Dist. v. Superior Court, supra,* 205 Cal.App.4th at p. 708.) To implement this policy, Government Code section 6253, subdivision (a) provides all persons with the right to inspect any public record maintained by state or local agencies, subject to various enumerated exemptions. (*Long Beach Police, supra,* 59 Cal.4th at p. 67; *Anderson-Barker*, at p. 63; *Consolidated Irrigation Dist.*, at p. 708.) The act "broadly defines ' "[p]ublic records" ' as including 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency . . . .' (Gov. Code, § 6252, subd. (e).)" (*Long Beach Police,* at p. 67; *Consolidated Irrigation Dist.*, at p. 708.) Here, it is undisputed that the County is such a

6

local agency, and that the billing records at issue are public records within the meaning of the CPRA.

The CPRA embodies a strong policy in favor of disclosure. (*Bakersfield City School Dist. v. Superior Court, supra,* 118 Cal.App.4th at p. 1045.) Because the CPRA furthers the people's right of access, it must be construed broadly. (Cal. Const., art. I, § 3, subd. (b)(2); *Anderson-Barker, supra,* 211 Cal.App.4th at p. 63.)

The people's right of access is not absolute, however. (*Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1254.) The CPRA contains over two dozen express exemptions. (Gov. Code, § 6254; *International Federation, supra,* 42 Cal.4th at p. 329; *Humane Society of U.S.*, at pp. 1254-1255.) "The 2004 initiative that amended the state Constitution to include a right of access to public records explicitly preserves such statutory exceptions. (Cal. Const., art I, § 3, subd. (b)(5).)" (*International Federation*, at p. 329, fn. 2.) The exemptions are to be construed narrowly. (*Humane Society of U.S.*, at p. 1254; *Anderson-Barker, supra,* 211 Cal.App.4th at p. 60.)

Relevant here is subdivision (k) of Government Code section 6254, which provides an exemption for "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." Pursuant to this subdivision, documents protected by the attorney-client privilege are not subject to CPRA disclosure. (*Anderson-Barker, supra,* 211 Cal.App.4th at p. 64; *Roberts v. City of Palmdale, supra,* 5 Cal.4th at p. 370 ["By its reference to the privileges contained in the Evidence Code . . . the Public Records Act has made the attorney-client privilege applicable to public records"]; *Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 527 ["The Public Records Act does not require the disclosure of a document that is subject to the attorney-client privilege"].)

Additionally, Government Code section 6255, subdivision (a), sometimes referred to as the "public interest" or "catchall" exemption, allows a public agency to " 'justify withholding any record by demonstrating that . . . on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest

7

served by disclosure of the record.' " (*Long Beach Police, supra,* 59 Cal.4th at p. 67; *International Federation, supra,* 42 Cal.4th at p. 329; *Bakersfield City School Dist. v. Superior Court, supra,*118 Cal.App.4th at p. 1045.)  This provision contemplates a case-by-case balancing process, and the proponent of nondisclosure must demonstrate a "clear overbalance on the side of confidentiality." (*Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1071.)

A public entity opposing disclosure bears the burden to show the requested information falls within the parameters of a specific exemption.  (*Long Beach Police, supra,* 59 Cal.4th at p. 67; *International Federation, supra,* 42 Cal.4th at p. 329; *Anderson-Barker, supra,* 211 Cal.App.4th at p. 63; Gov. Code, § 6255, subd. (a) ["The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter"].)  "Unless one of the exceptions stated in the Act applies, the public is entitled to access . . . ."  (*International Federation,* at p. 329.)

b.  *The attorney-client privilege*

The attorney-client privilege is embodied in Evidence Code section 950 et seq. and protects confidential communications between a client and his or her attorney made in the course of an attorney-client relationship.  (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 732 (*Costco*); *Roberts v. City of Palmdale, supra,* 5 Cal.4th at p. 371.)  " '[T]he fundamental purpose of the attorney-client privilege is the preservation of the confidential relationship between attorney and client [citation], and the primary harm in the discovery of privileged material is the disruption of that relationship . . . .' [Citation.]" (*Fireman's Fund Ins. Co. v. Superior Court* (2011) 196 Cal.App.4th 1263, 1272.)  Evidence Code section 954 "confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . .' " (*Costco*, at p. 732.)  "[T]he public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.' [Citation.]"

8

(*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599; *Roberts v. City of Palmdale,* at p. 380.)  " 'Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship.  As [our Supreme Court] has stated:  "The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." [Citations.]' "  (*Costco,* at p. 732.)

Evidence Code section 952 broadly defines "confidential communication." (*Fireman's Fund Ins. Co. v. Superior Court, supra,* 196 Cal.App.4th at p. 1273.)  Section 952 provides that a confidential communication means "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence," by confidential means, and "includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."  "The term 'confidential communication' is broadly construed, and communications between a lawyer and his [or her] client are presumed confidential, with the burden on the party seeking disclosure to show otherwise."  (*Gordon v. Superior Court* (1997) 55 Cal.App.4th 1546, 1557.)  Discovery of a privileged communication is barred irrespective of whether it includes unprivileged material.  (*Costco, supra,* 47 Cal.4th at p. 734.)

Where no enumerated exception applies (see Evid. Code, §§ 956-962), " '[t]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' [Citation.]"  (*Costco, supra,* 47 Cal.4th at p. 732.)

*3. Are billing statements covered by the attorney-client privilege under California law?*

We begin our analysis with the dispositive question of whether billing statements qualify as privileged communications under Evidence Code section 952.  While several cases have touched on the fringes of this question, none have squarely decided it.

9

In *Anderson-Barker,* a colleague of attorneys who represented the plaintiffs in a pending civil rights suit brought against the County made a CPRA request for billing records of law firms that represented the County in the lawsuit. The CPRA request sought the firms' invoices, attorney time records, and the County's payment records. (*Anderson-Barker*, *supra*, 211 Cal.App.4th at pp. 60-61.) The County asserted that the documents were attorney-client privileged and work product communications not subject to disclosure, and were also exempt under the CPRA's "pending litigation" exemption. (Gov. Code, § 6254, subd. (b);[2] *Anderson-Barker*, at p. 61.) The trial court ruled the documents were not attorney-client privileged communications. It ordered the records redacted to protect portions containing attorney work product, and ordered disclosure of the information that was " 'not work product—the hours worked, the identity of the person performing the work, and the amount charged.' " (*Anderson-Barker,* at p. 61.) The trial court concluded the CPRA's "pending litigation" exemption did not apply, because it pertained only to records specifically prepared for *use* in litigation. (*Id.* at p. 62.) The County challenged the latter aspect of the trial court's ruling via a writ petition, but did "*not* challenge the trial court's ruling with respect to the attorney-client and work product privileges." (*Ibid*.) The appellate court upheld the trial court's ruling that, given the narrow construction of CPRA exemptions, the pending litigation exemption did not apply because although the billing records related to the litigation, they were not specifically prepared for use in the litigation. (*Id.* at pp. 64, 67.) Here, the pending litigation exemption is not at issue; the County does not aver that the records fall within that exemption. Thus, because cases are not authority for propositions not considered (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626), *Anderson-Barker* does not answer the question before us.

---

[2]     The pending litigation exemption excepts from disclosure records " 'pertaining to pending litigation to which the public agency is a party . . . until the pending litigation . . . has been finally adjudicated or otherwise settled.' " (*Anderson-Barker, supra,* 211 Cal.App.4th at p. 60; Gov. Code, § 6254, subd. (b).)

In *Smith v. Laguna Sur Villas Community Assn.* (2000) 79 Cal.App.4th 639, two condominium associations retained a law firm to bring a construction defect action against the developer. A dissident group of residents demanded to review the law firm's work product and legal bills. (*Id.* at p. 642.) The association objected that the documents were protected by the attorney-client and work product privileges. The appellate court affirmed the trial court's holding that the association was the holder of the attorney-client privilege and individual homeowners could not demand the production of privileged documents, except as allowed by the association. (*Id.* at p. 643.) *Smith* assumed without discussion that the legal bills in question were protected by the privilege. Again, because the case did not directly consider the issue, it does not answer the question before us.

The primary issue in *Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, was whether a trial court could, when awarding attorney fees, rely on records not provided to the defendant. There, in several coordinated class actions, plaintiffs alleged that Party City improperly recorded zip code information during credit card transactions. After the trial court approved a settlement of the cases, the plaintiffs sought attorney fees. (*Id.* at pp. 1312-1314.) Party City opposed the motion on the ground the fees claimed were excessive and duplicative, among other things. (*Id.* at p. 1316.) The trial court requested detailed time records, which most of the class counsels had offered to provide, for in camera review. After considering the time records in camera, the court awarded the requested fees. On appeal, our colleagues in Division Seven agreed with Party City that it was improper for the court to rely upon billing information that Party City had no opportunity to challenge. (*Id.* at p. 1312.) In arguing against that conclusion, the plaintiffs had "suggest[ed] class counsel's billing records contain[ed] privileged information, thus justifying in camera review." (*Id.* at p. 1326.) *Concepcion* rejected this argument, explaining, "we seriously doubt that all—or even most—of the information on each of the billing records proffered to the court was privileged. Certainly the trial court made no such finding. Nor is there any explanation why the supplemental information requested by the court could not have been provided by filing—and serving on Party City—redacted copies of the bills deleting any privileged

11

information." (*Id*. at pp. 1326-1327.) While *Concepcion* was skeptical of the notion that the billing records were privileged on the wholly different facts of that case, the court offered no analysis of the basis for its view.[3]

Accordingly, we turn to analysis of Evidence Code section 952.

a. *A communication between attorney and client, arising in the course of representation for which the client sought legal advice, need not include a legal opinion or advice to qualify as a privileged communication.*

The trial court's written ruling suggests it believed that to establish the preliminary facts necessary to support a claim of attorney-client privilege, a party must do more than demonstrate that a document is a confidential communication between attorney and client, made in the course of the representation. It reasoned: "Evidence Code section

---

[3]     The ACLU points out that the Ninth Circuit, and courts in other jurisdictions, have held the attorney-client privilege does not categorically protect billing records. (See, e.g., *Clarke v. American Commerce Nat. Bank* (9th Cir. 1992) 974 F.2d 127, 129-130 [under the federal common law, the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege; correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege]; *DiBella v. Hopkins* (2d Cir. 2005) 403 F.3d 102, 120 ["In New York, attorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered"]; *Beavers v. Hobbs* (S.D. Iowa 1997) 176 F.R.D. 562, 565 [generally, billing records that do not reveal confidential information are subject to discovery and not protected by the attorney-client privilege]; *Tipton v. Barton* (Mo.App. 1988) 747 S.W.2d 325, 330-332.) Other non-California authorities hold differently. (See *State ex rel. Dawson v. Bloom-Carroll Local School Dist.* (Ohio 2011) 131 Ohio St. 3d 10 [959 N.E.2d 524, 529] [" 'While a simple invoice ordinarily is not privileged, itemized legal bills necessarily reveal confidential information and thus fall within the [attorney-client] privilege' "]; *Progressive American Ins. Co. v. Lanier* (Fla.App., 1st Dist. 2001) 800 So.2d 689, 690 [billing statements were absolutely privileged as attorney-client communications].) Because in California the attorney-client privilege is a creature of statute and governed by California law (see *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 206-209), these out-of-state authorities are of limited utility.

12

952 does not automatically apply to any communication between an attorney and his or her client. . . . Rather, the party claiming the privilege must assert specific facts, usually via declarations, demonstrating how the challenged document qualifies as a privileged communication." The ACLU takes this approach a step further, and avers that it is a "basic principle" that "communications that do not contain legal advice or opinion are not privileged." We disagree.

As noted, Evidence Code section 952 defines "confidential communication" for purposes of the attorney-client privilege. It states: "As used in this article, 'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."

The parties disagree about the meaning of the final clause, "and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." The ACLU reads this phrase to mean that only communications containing legal advice or opinion qualify as confidential communications. The County, on the other hand, contends it means that a confidential communication includes, but is not limited to, a communication incorporating the lawyer's legal opinions or advice.

When interpreting a statute, our goal is to effectuate the Legislature's intent. (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630; *Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660, 677.) We begin with the plain, commonsense meaning of the language used by the Legislature. (*Riverside County Sheriff's Dept.*, at p. 630.) If the language is susceptible to more than one reasonable construction, we may look to extrinsic aids, such as the legislative history, the purpose of the statute, and public policy. (*Holland v. Assessment Appeals Bd. No. 1*

13

(2014) 58 Cal.4th 482, 490; *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107.)  We avoid any construction that would lead to an unreasonable, impractical, or arbitrary result. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 388; *Roger Cleveland Golf Co., Inc.,* at p. 678.)

Here, the question is whether "includes" in the final clause of the statute is a requirement, or denotes examples of the types of information that may be included in a confidential communication.  To the extent the statutory language is ambiguous, the County argues that the statute's legislative history suggests an answer.  Evidence Code section 952 was enacted as part of the original Evidence Code in 1965, and replaced the former codification of the privilege in Code of Civil Procedure section 1881, subdivision 2.  As originally enacted, the clause at issue stated "and includes advice given by the lawyer in the course of that relationship."  (Stats. 1965, ch. 299, art. 3, pp. 1325-1326.)  It was amended in 1967 to read "and includes a *legal opinion formed* and the advice given by the lawyer in the course of that relationship."  (Stats. 1967, ch. 650, § 3, p. 2006, italics added.)  This change has been explained as follows:  " 'The comment of the Law Revision Commission to the 1967 amendment makes clear the scope of the amendment. "The express inclusion of 'a legal opinion' in the last clause will preclude a possible construction of this section that would leave the attorney's uncommunicated legal opinion—which includes his impressions and conclusions—unprotected by the privilege. Such a construction would virtually destroy the privilege." ' [Citation.]" (*Fireman's Fund Ins. Co. v. Superior Court, supra,* 196 Cal.App.4th at p. 1273; *Benge v. Superior Court* (1982) 131 Cal.App.3d 336, 345 [the "express inclusion of a 'legal opinion' in the last clause of section 952 precludes inquiry into the lawyer's uncommunicated impressions and conclusions concerning the case"].)  Thus, the County avers, the challenged language was not included to limit the privilege to only those communications encompassing the attorney's legal opinion; if a legal opinion was not part of the original definition of confidential communication, it cannot have been a required element.  We agree.  The Legislature's intent in amending Evidence Code section 952 was clearly not

14

to *restrict* privileged communications to those containing a legal opinion, but to *protect* uncommunicated opinions. Although the 1967 amendment does not definitively suggest what was intended by the original use of the phrase "includes advice given by the lawyer," the amended statute's use of the conjunctive "and" to link "a legal opinion formed" with "the advice given" does not readily suggest a communication is privileged only if it contains an attorney's advice. Certainly, nothing in the California Law Revision Commission's comments to Evidence Code section 952, as originally enacted, suggests such an intent. (See Cal. Law Revision Com. com., reprinted at 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 952, pp. 307-308.)[4]

Moreover, we must construe Evidence Code section 952 to avoid absurd results and effectuate the Legislature's intent. As the County points out, the construction suggested by the ACLU would be problematic when a communication originates with the client. A client's letter or email to his or her attorney is unlikely to contain a legal opinion or legal advice, yet there is little doubt most such communications would fall within the statutory definition. Further, the "fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." (*Mitchell v. Superior Court, supra,* 37 Cal.3d at p. 599; *Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 912 [the "purpose of the attorney-client privilege is to enhance the effectiveness of our adversarial legal system by encouraging full and candid communication between lawyers and clients"].) These goals would not be furthered if clients and attorneys were uncertain whether their communications contained sufficient advice or opinion to qualify as confidential communications. Such a constricted view of Evidence Code section 952 would chill, rather than encourage, robust

---

[4] The Law Revision Commission's comments reflect the Legislature's intent in enacting Evidence Code section 952. (*Arellano v. Moreno* (1973) 33 Cal.App.3d 877, 884; Assem. Com. on Judiciary, Rep. on Assem. Bill No. 333 (1965 Reg. Sess.) 1 Assem. J. (1965 Reg. Sess.) p. 1712; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 333 (1965 Reg. Sess.) 2 Sen. J. (1965 Reg. Sess.) p. 1573.)

discussion between clients and their lawyers. And, the ACLU's proposed construction of Evidence Code section 952 appears impractical in light of Evidence Code section 915. Unlike in many other jurisdictions, absent the client's consent, in California a trial court is generally not permitted to require disclosure of materials assertedly protected by the attorney-client privilege for in camera review in order to rule upon the claim of privilege. (*Costco, supra,* 47 Cal.4th at p. 736; *Citizens for Ceres, supra,* at p. 911.) Thus, if the parties disagree about whether communications are protected by the attorney-client privilege, it is unclear how their claims could be adequately adjudicated if resolution of the issue turned on the content of the disputed communications.[5]

In any event, the interpretation advanced by the ACLU does not comport with existing authority. "During the course of the attorney-client relationship, the protected communication may consist of information transmitted between a client and his lawyer, advice given by the lawyer, or a legal opinion formed and given by the lawyer in the course of that relationship." (*Benge v. Superior Court, supra,* 131 Cal.App.3d at p. 345; *Mitchell v. Superior Court, supra,* 37 Cal.3d at p. 601 [warnings to plaintiff from her attorney about the effects of chemical exposure were privileged even though they involved factual information as opposed to legal advice]; *People v. Bolden* (1979) 99 Cal.App.3d 375, 379 [Evidence Code section 952 "uses 'legal opinion' to specify one type of information protected"]; 2 Witkin, Cal. Evidence (5th ed. 2012) Witnesses, § 111, p. 409 ["The protected communication may be either 'information transmitted between a client and his or her lawyer' or 'advice given by the lawyer' " or " 'a legal opinion

---

[5]     Of course, a litigant might be required to reveal some information in camera to enable the court to determine whether a communication is subject to the attorney-client privilege. (*Costco, supra,* 47 Cal.4th at p. 737.) Evidence Code section 915 "does not prohibit disclosure or examination of *other* information to permit the court to evaluate the basis for the claim" of privilege, such as whether the privilege is held by the party asserting it, whether the attorney-client relationship existed at the time the communication was made, or whether the client intended the communication to be confidential. (*Costco*, at p. 737.) And, a party is free to *request* an in camera review of the communications at issue to aid the court. (*Id.* at p. 740.)

formed' even though not communicated to the client"].) The ACLU cites no authority in which a communication between attorney and client, arising out of the attorney's legal representation of the client, was held to be outside the scope of Evidence Code section 952 because it did not contain a legal opinion or advice.

*Costco* compels rejection of the ACLU's position. There, Coscto retained a law firm to provide legal advice on whether some of its managers were exempt from California's wage and overtime laws. The firm's attorney, Hensley, confidentially interviewed two Costco managers, and, based in part on those interviews, produced an opinion letter for Costco. Subsequently, certain Costco employees filed a class action claiming that Costco had misclassified and underpaid its managers. In the course of that litigation plaintiffs sought to compel discovery of Hensley's opinion letter. Costco asserted the attorney-client privilege and the work product doctrine. Over Costco's objection the trial court ordered an in camera review of the opinion letter to determine the merits of Costco's claims of privilege. It subsequently ordered disclosure. Portions of the letter containing Hensley's impressions, observations, and opinions were redacted, but portions concerning factual information about various employees' job responsibilities were disclosed. (*Costco*, *supra*, 47 Cal.4th at pp. 730-371.)

The California Supreme Court held this was error: "the attorney-client privilege attach[ed] to Hensley's opinion letter in its entirety, irrespective of the letter's content." (*Costco*, *supra*, 47 Cal.4th at p. 731.) The court explained: "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship. [Citations.] Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." (*Id.* at p. 733.) "That Costco engaged Hensley to provide it with legal advice and that the opinion letter was a communication between Costco's attorney (Hensley) and Costco are undisputed. The letter was 'confidential,' defined as 'information transmitted between a

17

client and his or her lawyer in the course of [the attorney-client] relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons . . . .' " (*Ibid.*) "That Hensley's opinion letter may not have been prepared in anticipation of litigation is of no consequence; the privilege attaches to any legal advice given in the course of an attorney-client relationship." (*Ibid.*) Accordingly, Costco had made out a prima facie claim of privilege. (*Ibid.*)

The court went on to explain: "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." (*Costco*, *supra*, 47 Cal.4th at p. 734.) Pointing to *Mitchell v. Superior Court, supra,* 37 Cal.3d 591, the court observed: " 'Neither the statutes articulating the attorney-client privilege nor the cases which have interpreted it make any differentiation between "factual" and "legal" information.' " (*Costco*, at p. 734.) "[W]hen the communication is a confidential one between attorney and client, the entire communication, including its recitation or summary of factual material, is privileged. . . . [If] the factual material referred to or summarized in Hensley's opinion letter is itself unprivileged it may be discoverable by some other means, but plaintiffs may not obtain it by compelling disclosure of the letter." (*Id.* at p. 736.)

*Costco* then turned to analysis of whether the trial court had erred by ordering in camera review of the letter. The court concluded such review was improper in light of Evidence Code section 915. (*Costco*, *supra*, 47 Cal.4th at pp. 736-739.) Significant for our purposes here, *Costco* reasoned: "[B]ecause the privilege protects a *transmission* irrespective of its content, there should be no need to examine the content in order to rule on a claim of privilege." (*Id.* at p. 739.)

Finally, the court disapproved an earlier decision, *2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377. At issue there were communications transmitted to an insurer from in-house claims adjusters, who were also attorneys. The insurer claimed all the communications were privileged as involving legal advice from its attorneys, whereas the petitioner asserted the attorneys had been acting as claims adjusters, not counsel.

18

(*Costco, supra,* 47 Cal.4th at p. 739.) The appellate court had distinguished communications reporting the results of factual investigations from those reflecting the rendering of legal advice, and held only the latter were privileged. (*Ibid.*) *Costco* held this was error: "The proper procedure would have been for the trial court first to determine the dominant purpose *of the relationship* between the insurance company and its in-house attorneys, i.e., was it one of attorney-client or one of claims adjuster-insurance corporation . . . ." (*Id.* at pp. 739-740.) "If the trial court determined the communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." (*Id.* at p. 740.)

Costco teaches that the proper focus in the privilege inquiry is not whether the communication contains an attorney's opinion or advice, but whether the relationship is one of attorney-client and whether the communication was confidentially transmitted in the course of that relationship. *Costco* did not state, when describing the requisite preliminary showing, that the party claiming the privilege had to show the communication contained an opinion, advice, or indeed any particular content; rather, the preliminary facts necessary were "a communication made in the course of an attorney-client relationship." (*Costco*, *supra*, 47 Cal.4th at p. 733.) *Costco* appears to have disapproved a content-based test for determination of the attorney-client privilege, in that it did not distinguish between the factual or legal aspects of the communications. Instead, the inquiry turned on whether there was an attorney-client relationship between the parties to the communication. Of course, in *Costco*, the communication at issue was an opinion letter, which by definition must have contained the attorney's legal opinions. But *Costco*'s analysis did not hinge upon this circumstance; instead, it made clear that the privilege protects a "*transmission* irrespective of its content." (*Id.* at pp. 739, 731.) *Costco* is therefore fatal to the claim that Evidence Code section 952 applies only to communications that contain a legal opinion or advice.

b. *Application here*

We turn, then, to the question of whether the County met its burden of establishing the preliminary facts necessary to support application of the privilege, that is, a communication made in the course of an attorney-client relationship. (*Costco, supra,* 47 Cal.4th at p. 733; see *Citizens for Ceres v. Superior Court, supra,* 217 Cal.App.4th at p. 911.) That the law firms in question were retained to provide the County with legal advice in the matters to which the invoices pertained is undisputed; indeed, the fact of the representation was the reason the ACLU made the CPRA requests. There is also no dispute that the invoices constituted information transmitted by the law firms to the County in the course of the representation. (See *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 123 [where underlying facts were undisputed, petitioners met their burden to show preliminary facts necessary to support a prima facie claim of privilege].)

Appended to the County's brief in answer to the petition below was the declaration of Roger H. Granbo, an Assistant County Counsel in the Law Enforcement Division of the Los Angeles County Counsel's Office. Granbo declared, under penalty of perjury, that his duties included supervising outside counsel in their representation of the County and other public agencies for which the Board was the governing body. His duties included processing billing invoices, and he was familiar with the manner of their processing. He believed such invoices were subject to the attorney-client privilege and kept "these documents and the information they contain, confidential." He further declared that "we make every effort to confine distribution of this material and information to our office alone, and to authorized representatives of the client, who are similarly required to keep the information confidential. That is our intent and policy as a general matter and in this particular matter." The trial court did not expressly rule on whether the declaration established the requisite confidentiality, but neither the court nor the ACLU appear to question its sufficiency. Thus, the invoices were confidential communications between attorney and client within the meaning of Evidence Code section 952.

20

The trial court's contrary ruling stated that the County had to do more than claim the documents were confidential, because "Evidence Code section 952 does not automatically apply to any communication between an attorney and his or her client." In support, the court cited *People v. Gionis* (1995) 9 Cal.4th 1196, 1210. The court was certainly correct that not all communications involving an attorney are ipso facto privileged. As *Gionis* explained: "We cannot endorse the . . . view that the attorney-client privilege applies whenever issues touching upon legal matters are discussed with an attorney. That has never been the law. Significantly, a communication is not privileged, even though it may involve a legal matter, if it has no relation to any professional relationship of the attorney with the client. [Citation.] Moreover, it is not enough that the client seek advice from an attorney; such advice must be sought from the attorney 'in his professional capacity.' " (*Id*. at p. 1210.) In *Gionis,* the defendant's statements to his friend, an attorney, were all made after the attorney had declined to represent him, and thus were not privileged. (*Id.* at pp. 1210-1212.) The privilege also does not apply "when the attorney acts merely as a negotiator for the client or is providing business advice [citation]; in that case, the relationship between the parties to the communication is not one of attorney-client." (*Costco, supra,* 47 Cal.4th at p. 735.) But none of these circumstances were present here. It is undisputed that the County engaged the law firms to represent it in the lawsuits, and the invoices arose from those very lawsuits.

The trial court's ruling also stated that the County had failed to assert specific facts demonstrating "how the challenged document qualifies as a privileged communication." Presumably, the trial court meant the County had to do more to show the content of the communications was privileged. However, as *Costco* explained, "because the privilege protects a *transmission* irrespective of its content, there should be no need to examine the content in order to rule on a claim of privilege." (*Costco, supra,* 47 Cal.4th at p. 739.) The court also reasoned that the County had failed to show how, with proper redactions, the billing statements would qualify as privileged communications. But, "when the

21

communication is a confidential one between attorney and client, the entire communication" is privileged.  (*Id.* at p. 736.)

The ACLU argues that the CPRA must be broadly construed, and the exemptions to it must be narrowly construed.  (Cal. Const., art. I, § 3, subd. (b)(2) [a statute "shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access"]; *Anderson-Barker, supra,* 211 Cal.App.4th at p. 60; *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1262.)  But, the CPRA expressly exempts from disclosure records that are privileged under the relevant provisions of the Evidence Code.  The attorney-client privilege is also anchored in public policy (*Roberts v. City of Palmdale, supra,* 5 Cal.4th at p. 380; *Citizens for Ceres v. Superior Court, supra,* 217 Cal.App.4th at p. 913).  As we have explained, the invoices in question fall within the express parameters of Evidence Code section 952.  We may not disregard the plain application of the statute under the guise of narrow construction.  A narrow construction of an exception that is a statutory privilege cannot reasonably be construed to be narrower than the scope of the privilege itself.

The ACLU also contends that public access to the billing records in question is a matter of utmost public importance.  It urges that the "public has a right to know how its government is using—or misusing—taxpayer money, especially when that money is being used to defend against lawsuits relating to allegations of excessive force by County employees, which itself is of public interest."  They point to authority observing that "[i]t is difficult to imagine a more critical time for public scrutiny of its governmental decision-making process than when the latter is determining how it shall spend public funds."  (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 955.)  We agree that significant public interests are involved.  But, as noted, our Supreme Court has observed that where the attorney-client privilege applies, disclosure may not be ordered, without regard to relevance, necessity or the particular circumstances of the case.  (*Costco, supra,* 47 Cal.4th at p. 732.)  And, while the invoices themselves are privileged, information that is not otherwise privileged does not become so merely by being transmitted to, or in this case from, an attorney.  " ' "While the privilege fully covers

22

communications as such, it does not extend to subject matter otherwise unprivileged merly because that subject matter has been communicated to the attorney." ' " (*Id.* at p. 735; *Edwards Wildman Palmer LLP v. Superior Court* (2014) 231 Cal.App.4th 1214, 1234.) Therefore, to the extent the information the ACLU seeks is available in a nonprivileged source, the fact the invoices are privileged does not necessarily protect the information itself.[6]

Next, the ACLU urges that application of the attorney-client privilege to billing records will "wreak havoc with the procedures for seeking fees under state and federal fee shifting statutes. If an attorney's billing descriptions are categorically privileged, . . . statutes, cases, and courts' procedural requirements would, in effect, *require* prevailing parties to routinely violate the attorney-client privilege and work product doctrine to recover" fees to which they are entitled. We believe this concern is overstated. The Evidence Code provides an exception to the privilege when there has been a breach of duty arising out of the lawyer-client relationship. (See Evid. Code, § 958; *Carlson, Collins, Gordon & Bold v. Banducci* (1967) 257 Cal.App.2d 212, 227-228 ["It is an established principle involving the relationship of attorney and client that an attorney is released from those obligations of secrecy which the law places upon him whenever the disclosure of the communication, otherwise privileged, becomes necessary to the protection of the attorney's own rights"].) Detailed billing statements are not always necessary to support a fee award. (See *Concepcion v. Amscan Holdings, Inc., supra*, 223 Cal.App.4th at p. 1324, and authorities cited therein ["It is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method"].) And, of course, a client is free to waive the attorney-client privilege, thereby allowing his or her attorneys to provide detailed time records when necessary to support a

---

[6]     Because we conclude the attorney-client privilege precludes discovery of the billing records, we express no opinion as to whether the information contained in the billing records might be discoverable by some other means.

23

request for attorney fees.  (See Evid. Code, § 912, subd. (a) [privilege is waived if the holder "has consented to disclosure made by anyone"].)

Because we conclude the County met its preliminary burden to show the requested records were confidential communications within the meaning of Evidence Code section 952, we grant the County's petition and order the superior court to vacate its order compelling disclosure.  In light of our conclusion, we do not reach the parties' contentions regarding application of the CPRA's "catchall" exemption or Business and Professions Code sections 6149 and 6148.

## DISPOSITION

The petition is granted.  The superior court is directed to vacate its order compelling the County to disclose the records requested in the ACLU's July 1, 2013 CPRA request.

## CERTIFIED FOR PUBLICATION

ALDRICH, J.

We concur:

EDMON, P. J.

KITCHING, J.

25