Filed 1/11/23  McCoy v. Ojose CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| MISHEAL McCOY et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>MAUREEN OJOSE et al.,<br><br>    Defendants and Appellants. | B307219<br><br>(Los Angeles County Super. Ct. No. BC702157)<br><br><br>ORDER MODIFYING OPINION<br>[No change in judgment] |


BY THE COURT:

It is ordered that the opinion filed herein on December 20, 2021, is modified as follows:

On page 11, changing the three references to "Misheal's testimony" in footnote 5 to read "Marta's testimony."

There is no change in judgment.

_____
RUBIN, P. J.   BAKER, J.   KIM, J.

Filed 12/30/22  McCoy v. Ojose CA2/5 (first modification)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MISHEAL McCOY et al., Plaintiffs and Respondents, v. MAUREEN OJOSE et al., Defendants and Appellants. | B307219 (Los Angeles County Super. Ct. No. BC702157) ORDER MODIFYING OPINION [No change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on December 20, 2021, is modified as follows:

On page 1, adding appearances for respondents by "Law Offices of Akudinobi & Ikonte, Chijioke O. Ikonte and Emmanuel C. Akudinobi" so it reads "Oceanbridge Law Firm, Macauley Ekpenisi; Law Offices of Akudinobi & Ikonte, Chijioke O. Ikonte and Emmanuel C. Akudinobi for Plaintiffs and Respondents."

There is no change in judgment.

_____

RUBIN, P. J.    BAKER, J.    KIM, J.

Filed 12/20/22  McCoy v. Ojose CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MISHEAL McCOY et al.,<br><br>    Plaintiffs and Respondents,<br><br>       v.<br><br>MAUREEN OJOSE et al.,<br><br>    Defendants and Appellants. | B307219<br><br>(Los Angeles County<br>Super. Ct. No. BC702157) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed.

Travis M. Poteat, for Defendants and Appellants.

Oceanbridge Law Firm, Macauley Ekpenisi, for Plaintiffs and Respondents.

## I.    INTRODUCTION

Plaintiffs Marta McCoy and her daughters, Misheal and Briana McCoy, rented a single-family residence from defendants Maureen and Emuakpoyeri Ojose from August 2014 to September 2017.[1]  After defendants evicted plaintiffs through an unlawful detainer action, plaintiffs brought an action against defendants for, among other things, breach of the warranty of habitability based on a rat infestation and a lack of heat in the house, and negligence based on Misheal's fall on deficiently maintained stairs.  Defendants brought a cross-action against plaintiffs for breach of contract and common count.  Following a bench trial, the trial court entered a judgment in plaintiffs' favor for $33,880 on their habitability claim and $13,877 on their negligence claim.  It also entered judgment in plaintiffs' favor on defendants' claims.  Defendants appeal and we affirm.

## II.    BACKGROUND[2]

On August 7, 2014, plaintiffs entered into a lease agreement with defendants.  The lease term commenced on August 15, 2014.  Marta did not live in the house; Misheal and Briana did.

---

[1]    Because all of the parties share one of two last names, we will refer to them by their first names.

[2]    Consistent with our role as an appellate court, we set forth the facts in the light most favorable to the judgment.  (*In re M.S.* (1995) 10 Cal.4th 698, 707 ["As an appellate court, we view the facts in the light most favorable to the judgment"].)

A.    *Rat Infestation*

In 2014, soon after Misheal and Briana moved in, Marta and Misheal observed rat traps in the house.  Misheal asked Maureen if the house had a previous rat problem.  Maureen said it did not.

In 2015, Misheal's foster daughter saw rats in the kitchen.  Shortly thereafter, Misheal saw rats in the kitchen.  Misheal saw rat feces in kitchen cabinets, in the pantry, on top of the refrigerator, in the living room, and in the attic.

When Misheal advised Maureen about the rat problem, Maureen said she would bring some rat traps.  When Maureen did not bring the traps right away, Misheal bought and placed some traps.  The traps caught rats and Misheal informed Maureen.

Thereafter, Misheal complained to Maureen several times about the rat problem.  Each time, Maureen told Misheal to buy rat traps.  Misheal testified that they "lived just catching them for a while," but she eventually called Orkin.  Orkin inspected the house and patched holes through which the rats entered the house.  Orkin was to monitor the rat issue for one year.  Misheal paid for the first visit and defendants paid for subsequent visits.  Notwithstanding Orkin's efforts, the house continued to have a rat problem, so Maureen canceled Orkin.

In 2017, Maureen called Terminix to address the rat problem.  The Terminix representative who inspected the property and attic told Misheal the insulation was "infested" with rat feces and urine and recommended that Maureen move Misheal and Briana into a hotel while the insulation was removed.  Maureen did not follow Terminix's recommendation.

According to Maureen, she hired a third company, Interstate, to address the rat issue.

B.    *Lack of Heat*

The house had two heaters, one upstairs and one downstairs. Marta testified that from 2014 to 2017, she went to the house three or four times per week and observed that it was "real cold" and "always freezing" in the downstairs family room and "always real hot upstairs."

Misheal testified that she first noticed the heaters did not work in November 2014. Misheal notified defendants about the heater problem. Defendants sent someone to fix the heaters, but they only fixed the downstairs unit. Misheal notified defendants that the upstairs heater still did not work. She notified defendants again in the middle of December that the upstairs heater did not work. By January 14, 2015, both heaters were fixed.

Briana testified that the heating problem started about the time they moved in in 2014.

C.    *Deficiently Maintained Stairs*

According to Misheal, the stairs were in disrepair when she moved into the house. In 2014, a repair was made with glue. In 2016, after the glue came off and the stairs deteriorated, Misheal took a photograph of the stairs and sent it to Maureen. In August 2016, Maureen inspected the house. Misheal told Maureen about the stairs and Maureen inspected them and said

they would be repaired.  As of May 17, 2017, defendants had not repaired the stairs.

On May 17, 2017, Misheal fell on the stairs, injuring her knee, ankle, foot, and back.  She went to the emergency room the next day.  She was prescribed pain medication and was on crutches for almost two weeks.  Later, she went to see a doctor and was prescribed physical therapy.

Jeff Hughes testified as an expert witness for plaintiffs.  He was a construction manager at Wexco International, a safety engineering, civil engineering, and construction consulting firm.  Hughes reviewed documents and assessed the safety of the house's staircase.  He opined that the stairs were in a dilapidated condition—the treads and risers were no longer uniform—and therefore unsafe.  The stairs' unsafe condition was a substantial factor in Misheal's fall and could easily have been repaired for a reasonable cost—$200—relative to the high risk of injury.  He believed Misheal was acting reasonably when she fell, and defendants knew or should have known of the hazard or unsafe condition because plaintiffs had notified them.

D.    *Statement of Decision*

Following seven days of trial,[3] the trial court issued a statement of decision that found the following:

_____

[3]    The record includes transcripts from only five of the seven-day trial.  It does not include a transcript, or suitable substitute, of the proceedings from November 13 or 20, 2019, which the Los Angeles County Superior Court Case Summary reflects were the first and sixth days of trial proceedings.

5

### 1. Breach of the Warranty of Habitability

The trial court found that defendants breached the warranty of habitability based on the following findings: (1) there was a significant rat problem on the property, defendants were put on notice of the problem, and defendants did not take appropriate action to remedy the problem; and (2) the property lacked adequate heat for "a significant period of time," defendants were put on notice of the problem, and defendants failed to remedy the problem.

The trial court found "that the conditions which gave rise to the Breach of The Warranty of Habitability lasted for 36 months." It assessed damages at 30 percent of the rent. After accounting for the security deposit and offsetting unpaid rent, the court awarded plaintiffs $33,880 on their habitability claim.

### 2. Negligence

The trial court found that defendants negligently maintained the stairs on which "[p]laintiff" (Misheal) fell. It further found that the condition of the stairs was dangerous, defendants were aware of the stairs' condition, and defendants had a duty to remedy the condition which they failed to do.

The trial court awarded "[p]laintiff" (Misheal) $13,877 consisting of $3,877 in medical bills and $10,000 in general damages.

6

# III. DISCUSSION

A.    *Sufficiency of the Evidence*

Defendants contend insufficient evidence supported the trial court's findings that they breached the warranty of habitability and were negligent.

1.    Standard of Review

"When an appellant contends the evidence is insufficient to support a judgment, order, or factual finding, we apply the substantial evidence standard of review. 'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court.' [Citation.] 'Substantial evidence' is not synonymous with 'any' evidence; rather, it means the evidence must be of ponderable legal significance, reasonable, credible, and of solid value. [Citation.] An appellate court presumes in favor of the judgment or order all reasonable inferences. [Citation.] If there is substantial evidence to support a finding, an appellate court must uphold that finding even if it would have made a different finding had it presided over the trial. [Citations.] An appellate

7

court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact. [Citations.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957–958 (*Cahill*).)

2.      Analysis

a.      Res judicata

Based on the parties' arguments on appeal, it appears defendants made, and the trial court denied, an oral motion in limine that argued plaintiffs' breach of the warranty of habitability claim was barred by the doctrine of res judicata. The apparent basis for the motion was that the habitability issue had been decided against plaintiffs in a prior unlawful detainer action. Defendants contend the court erred in denying their motion. Plaintiffs argue that we cannot review the court's ruling because defendants have not provided an adequate record. We agree with plaintiffs.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Cahill, supra,* 194 Cal.App.4th at p. 956.) An appellant must affirmatively establish error by an adequate record. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) In the absence of a proper record on appeal, the appealable judgment or order is presumed correct and must be affirmed. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296;

*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

There are several omissions from the appellate record defendants have provided that make the record inadequate. The record does not include: the minute order denying defendants' motion in limine; a reporter's transcript of the oral proceedings at the motion in limine; a settled or agreed statement of the oral proceedings at the motion in limine (Cal. Rules of Court, rule 8.120(b)); or a reporter's transcript or settled or agreed statement of the unlawful detainer court's ruling. Moreover, although the record contains the unlawful detainer court's minute order ordering judgment entered for defendants, the minute order is silent on the habitability issue.

> b. Merits

> > i. Breach of the warranty of habitability[4]

Defendants argue insufficient evidence supported the trial court's findings that defendants failed to take appropriate action to remedy the rat problem, the property lacked heat for a

---

[4] "'[A] warranty of habitability is implied by law in residential leases . . . .' [Citation.] The elements of a cause of action for breach of the implied warranty of habitability 'are the existence of a material defective condition affecting the premises' habitability, notice to the landlord of the condition within a reasonable time after the tenant's discovery of the condition, the landlord was given a reasonable time to correct the deficiency, and resulting damages.' [Citation.]" (*Peviani v. Arbors at California Oaks Property Owner, LLC* (2021) 62 Cal.App.5th 874, 891.)

significant period, and the rat and heat issues lasted for 36 months.  Plaintiffs respond that defendants have forfeited this argument by failing to show how and why the evidence favorable to plaintiffs' claims is insufficient to support the court's findings and by instead relying only on evidence favorable to defendants' position.  We agree with plaintiffs.

"""A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient*.  [Citation.]"  [Citation.]  Where a party presents only facts and inferences favorable to his or her position, "the contention that the findings are not supported by substantial evidence may be deemed waived."  [Citation.]'  [Citation.]" (*Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 504 (*Cameron*).)

As to the rat infestation, defendants' entire contention on appeal is that the evidence showed they purchased materials to resolve the rat problem, they hired three "rat companies," they "repaired from where the rats came," and the trial court believed the rat problem was solved.  Defendants address none of plaintiffs' evidence other than that which is purportedly favorable to defendants.  For example, they do not discuss Misheal's testimony that she saw rat traps, rats, and rat feces from 2014 to 2017, and first advised defendants about the rats in 2014.

As to the lack of heat for a significant time, defendants rely on Misheal's testimony that she complained about a lack of heat in November 2014 and the problem was fixed in January 2015, and, during that period, only one of the house's two heaters was not working.  Other than Misheal's testimony that she

10

complained about a lack of heat at the end of December 2016, defendants do not address any of plaintiffs' evidence about a lack of heat.[5]

Defendants interpret the trial court's finding that the conditions breaching the warranty of habitability lasted for 36 months as finding that each condition—the rat infestation and the lack of heat—separately lasted for 36 months. Accordingly, defendants argue, "the absence of either condition lasting for 36 months would constitute lack of substantial supporting evidence." We instead interpret the court's finding as a finding that defendants breached the warranty of habitability over a period of 36 months and that the breach consisted of a combination of the rat infestation and the lack of heat, neither condition necessarily lasting for 36 months.

As to the duration of the breach of the warranty of habitability, Misheal testified about observing rat traps, rats, and rat droppings from 2014 to 2017. Further, Marta testified that from 2014 to 2017, she went to the house three or four times per week and observed that it was "real cold" and "always freezing"

---

[5] Citing, inter alia, *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 390 ["'The trier of the facts may not believe impossibilities'"], defendants contend we should disregard Misheal's testimony on this point because "its falsity is apparent without resorting to inferences or deductions" based on her "testimony and the binding admission[s] of [plaintiffs'] counsel . . . ." Defendants do not identify the part of Misheal's testimony that shows the apparent falsity of her testimony about a lack of heat in December 2016. Defendants fail to explain how plaintiffs' counsel's statement that the heaters were working in January 2015 establishes the falsity of Misheal's testimony that there was a lack of heat nearly two years later at the end of December 2016.

11

in the downstairs family room and "always real hot upstairs." Defendants do not address this or other testimony concerning the duration of the warranty of habitability breach.

In their arguments, defendants do not set forth the facts favorable to plaintiffs and show how and why those facts are insufficient. Instead, they merely recite the evidence favorable to themselves and, based on that evidence, argue they should have prevailed at trial. Accordingly, they have forfeited their insufficient evidence arguments as to plaintiffs' habitability claim. (*Cameron, supra*, 82 Cal.App.5th at p. 504.)

Even if we were to consider the merits of defendants' arguments, we would reject them. As set forth above, Misheal testified about observing rat traps, rats, and rat droppings from 2014 to 2017, and Marta testified that she went to the house three or four times per week from 2014 to 2017 and observed that it was "real cold" and "always freezing" in the downstairs family room and "always real hot upstairs." That evidence is sufficient to support the trial court's findings that defendants breached the warranty of habitability and the warranty breach lasted for 36 months. (*Cahill, supra*, 194 Cal.App.4th at pp. 957–958.)

### ii. Negligence[6]

Defendants contend insufficient evidence supported the trial court's finding that they failed to remedy the dangerous

---

[6] "To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citation.]" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213.)

condition of the stairs.  Plaintiffs contend that defendants have forfeited the contention because they have not shown how and why the evidence favorable to plaintiffs' negligence claim is insufficient to support the court's findings; instead, defendants rely only on evidence favorable to their position.  We agree with plaintiffs.

Defendants contend there was insufficient evidence to support the trial court's negligence finding because "Maureen testified about the work that she or her handyman Perez performed to fix the subject stairs."  Moreover, plaintiffs failed to show they gave notice to defendants of the dangerous condition of the stairs immediately before Misheal was injured.

Defendants have not set forth the facts favorable to plaintiffs' negligence claim and shown how and why those facts are insufficient to support the trial court's finding.  Instead, they merely recite the evidence favorable to themselves and make the assertion, unsupported by authority, that a plaintiff may not prevail on a negligence claim unless the plaintiff notified the defendant of the dangerous condition immediately before the plaintiff was injured.  Accordingly, they have forfeited their insufficient evidence argument as to plaintiffs' negligence claim. (*Cameron, supra*, 82 Cal.App.5th at p. 504.)

Even if we were to consider the merits of defendants' contention, we would reject it.  As set forth above, Misheal testified the stairs were in disrepair, she notified Maureen of the stairs' condition, and Maureen said the stairs would be repaired but they were not.  Plaintiffs' expert Hughes testified that the stairs were in a dilapidated condition and unsafe, the stairs' unsafe condition was a substantial factor in Misheal's fall and could easily have been repaired for a reasonable cost relative to

13

the high risk of injury, defendants knew or should have known of the hazard or unsafe condition because plaintiffs had notified them, and Misheal was acting reasonably when she fell. That evidence is sufficient evidence to support the trial court's negligence finding. (*Cahill, supra*, 194 Cal.App.4th at pp. 957–958.)

B.    *Defendants' First Amended Cross-Complaint*

Defendants contend the trial court erred in failing to find in their favor on their breach of contract and common count causes of action in their first amended cross-complaint. According to defendants, the evidence they presented at trial in support of those claims was uncontradicted, unimpeached, and so compelling that no court could have found the evidence insufficient.

1.    <u>Standard of Review and Legal Principles</u>

"'[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."' [Citation]." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic*).) We treat as forfeited perfunctory arguments made without adequate legal argument. (*Tilbury Constructors, Inc. v. State*

14

*Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482 (*Tilbury*); *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 (*Harper*).)

2.    Background

In their contract cause of action in the first amended cross-complaint, defendants sought to recover $9,550 for unpaid rent, $700 in late fees on rent payments, $2,300 for gardening services and lawn care, $250 for house cleaning, $325 for screen replacement, $787 for door replacement and labor, $200 for carpet cleaning, $300 for lock replacement and unreturned keys, $300 for an unreturned remote garage opener, $300 for replacement of broken glass on the front door, $2,500 in attorney fees, $400 in filing fees, and $360 to have the Los Angeles County Sheriff's Office remove plaintiffs from the property.  In their common count cause of action, they sought to recover the unpaid rent and late fees.

In its statement of decision, the trial court found that except for the security deposit and unpaid rent credits reflected in its breach of the warranty of habitability damages calculation, defendants failed to prove any of their claims in their first amended cross-complaint.  The court entered judgment in plaintiffs' favor on defendants' claims.

15

3. <u>Analysis</u>

As to their contract cause of action, defendants set forth the elements of a breach of contract cause of action[7] and perfunctorily argue that they "proved the existence of [a] contract with [plaintiffs]"—i.e., the lease, "proved their performance of that [lease]," and "proved [plaintiffs'] breach of [the lease]." Defendants then argue they "proved the total amount of damages on their [First Amended Cross-Complaint]," listing the damage amounts they contend they proved. Finally, defendants argue that plaintiffs failed to present any evidence contesting any part of defendants' case.

Like their breach of contract argument, defendants' argument as to their common count cause of action is perfunctory. After setting forth the elements of a common count cause of action,[8] defendants argue they "proved the existence of [a] statement of indebtedness in a certain sum," "proved their consideration, namely their leasing of the subject real property to [plaintiffs]," and "proved [plaintiffs'] non-payment." Like their breach of contract argument, defendants assert that plaintiffs

---

[7]    "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

[8]    "The only essential allegations of a common count are '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.' [Citation.]" (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460.)

16

failed to present any evidence contesting any part of defendants' case.

Defendants' arguments as to their breach of contract and common count causes of action are inadequate. Defendants do nothing more than cite, without context or discussion, to certain portions of the record without explaining how this evidence compels a finding in their favor as a matter of law as to either cause of action. (*Sonic, supra*, 196 Cal.App.4th at p. 466.) Nor do they demonstrate how any such evidence was uncontradicted, unimpeached, and of a kind and weight that the trial court could not find it insufficient to support a judgment. (*Ibid.*) Defendants' arguments therefore fail. (*Tilbury, supra*, 137 Cal.App.4th at p. 482; *Harper, supra*, 82 Cal.App.4th at p. 1419, fn. 4.)

C.    *The Trial Court's Evidentiary Rulings*

Defendants contend the trial court abused its discretion in excluding evidence relevant to their breach of contract and common count claims.

1.    Standard of Review

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. (*Center for Biological Diversity v. California Department of Conservation, etc.* (2019) 36 Cal.App.5th 210, 227 (*Center for Biological Diversity*).) A court abuses its discretion when it applies the wrong legal standard. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*).)

17

### 2.     The Trial Court's Rulings

On direct examination, defendants asked Briana, "[D]id you pay rent on time all the time during your tenancy?"  The trial court sustained plaintiffs' objection that the question was not relevant.

Later, on direct examination, defendants asked Misheal if she was currently employed, who her employer was, and when she began her current employment.  Misheal responded that she was employed, her employer was Red Robin, and she began working in August.

The trial court asked defendants about the relevance of where Misheal was currently working.  Defendants responded that Misheal had lied about her work history and "the question is going to lead to that."  The court responded, "You can ask a different question, but it would seem . . . her current employment is irrelevant."

### 3.     Analysis

Evidence is relevant if it has any tendency in reason to prove a disputed material fact.  (Evid. Code, § 210.)  Whether Briana, who was on the lease, paid rent "on time all the time" during her tenancy was relevant to defendants' claims that plaintiffs had not paid all the rent due and had incurred fees for paying rent late.  Accordingly, the trial court erred in sustaining plaintiffs' relevance objection.  (*Costco, supra*, 47 Cal.4th at p. 733; *Center for Biological Diversity, supra*, 36 Cal.App.5th at p. 227.)

Defendants cannot, however, show that the trial court's error resulted in a miscarriage of justice requiring reversal (Cal. Const., art. VI, § 13; Evid. Code, § 354), because they cannot show prejudice. That is, defendants did not make an offer of proof about Briana's anticipated testimony in the trial court—she could have made any number of responses including that she paid rent "on time all the time." (*Gutierrez v. Cassiar Mining Corp.* (1998) 64 Cal.App.4th 148, 161 ["One function of an offer at trial is to provide a reviewing court with the means of assessing prejudice from any error"].)

As for questions concerning Misheal's current employment, any error was not prejudicial because defendants established where Misheal was currently employed and when she began her employment. Moreover, the trial court did not foreclose all inquiry directed at challenging Misheal's truthfulness, telling defendants they could ask different questions.

## IV.   DISPOSITION

The judgment is affirmed.  Plaintiffs are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.

20